## FOWLER *v.* STATE

[No. 134, September Term, 1964.]

*Decided February 11, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY and SYBERT, JJ., and ROBERT E. CLAPP, JR., J., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Joseph R. Hardiman* for the appellant.

*Loring E. Hawes, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan,*

*Jr., State's Attorney for Baltimore City,* and *William T. S. Bricker, Assistant State's Attorney,* on the brief, for the appellee.

CLAPP, JR., J., by special assignment, delivered the opinion of the Court.

This is an appeal from a sentence of life imprisonment imposed after a jury verdict of guilty of murder in the first degree without capital punishment.

The appellant, Leonard Augusta Fowler, was indicted on December 6, 1963, for the murder of his brother, Franklin Richard Fowler, on October 18, 1963. He was arraigned on December 9, 1963, at which time he was represented by counsel of his own choice, this attorney having been recommended to him by friends. At that time pleas of not guilty and not guilty by reason of insanity at the time of the commission of the alleged crime were entered and the court directed that he be transferred from the Baltimore City Jail to Clifton T. Perkins State Hospital for examination.

On April 28, 1964, trial was had before a jury with counsel of his own selection representing him and this jury found the appellant to be sane at the time of the commission of the crime and guilty of murder in the first degree without capital punishment. After imposition of sentence, the appellant appealed to this Court in proper person as an indigent and present counsel was appointed to represent him.

Two questions for decision were presented by the appellant both in his brief and in oral argument as follows:

1. Was the trial court's instruction that the burden is upon the defendant to prove insanity by a preponderance of the evidence prejudicial error?

2. Was appellant's trial counsel incompetent? (The brief and oral argument inform us that this issue is here raised for the first time at the specific direction of the appellant).

At the outset, it should be noted that no objection was made at the trial to any portion of the trial court's instruction and Rule 756 g would ordinarily preclude the appellant from raising any objection to the charge on appeal. However, as the charge

dealt with the burden of proof in cases where a sanity plea is filed and as this charge was given six days before the decision of this Court in *Bradford v. State,* 234 Md. 505, we have decided to take cognizance of the issue raised by the appellant as permitted by Rule 756 g.

Before the decision in *Bradford,* it had been the practice in some of the trial courts to instruct on the basis of the preponderance of evidence and the burden on the defense in connection with insanity pleas as was here done. See for example, the charge of Chief Judge Niles in *Thomas v. State,* 206 Md. 575, 586-587, Judge Macgill in *Bell v. State,* 234 Md. 254, and Judge Grady in *O'Connor v. State,* 234 Md. 459. Until *Bradford,* the question of the propriety of this instruction had not been decided by this Court, because there was in those cases insufficient evidence to rebut the initial presumption of sanity present in every criminal case. *Bradford,* however, decided that once evidence of insanity has been introduced which, if believed, would be sufficient to overcome the presumption of sanity, the State has then the burden of proving beyond a reasonable doubt that the defendant was sane at the time of the alleged commission of the offense.

The holding in *Bradford,* accordingly, means that the charge to the jury that "the burden is on the defense to prove insanity by a preponderance of the evidence, not beyond a reasonable doubt," should not be given. The trial court should decide, as a preliminary matter of law, whether there has been sufficient proof of insanity introduced which, if believed, would raise a question in the minds of reasonable men whether the defendant was or was not sane under the M'Naghten-Spencer test. If the trial court decides this preliminary question of law in the affirmative, then the jury should be instructed that the burden is upon the State to prove the defendant sane beyond a reasonable doubt. If the trial judge decides this preliminary question in the negative, the issue of insanity should be withdrawn from consideration by the jury, still, of course, leaving to the jury the question whether the State has proved the commission of the alleged crime beyond a reasonable doubt. *O'Connor v. State, supra,* and cases therein cited. See also 15 *Md. L. Rev.* 157, 162.

The State maintains, however, that even though the instruction of the trial court, in the light of *Bradford,* should not have been given, there was no reversible error because there was no sufficient evidence of insanity adduced at the trial to require the submission of the issue of insanity to the jury and, therefore, the submission of that issue to the jury (which found him sane) was more than the appellant was entitled to. With this contention we agree.

The record discloses that the appellant at the time of the alleged crime was a 19 year old youth with a ninth grade education who throughout his life had suffered from an "emotional deprivation" which resulted from an "unstable childhood" spent in various children's homes and a foster home, in addition to living with his mother after the death of his father. Some five months before the alleged crime he had met and begun living with a girl in a husband-wife relationship (without the sanction of clergy), she being the first person who, according to him, had ever shown him real affection. On her 18th birthday, four days before the alleged crime, they had applied for a marriage license but on the day following he returned to the apartment where they had been living and found that she had left. He searched for her, and, finally, his sister told him that the girl was now living with his brother in another part of Baltimore. The appellant went to the place where they were living the day before the shooting to ask the girl to return to him but she refused.

On the day of the shooting, the appellant went to this place with a pistol that he had bought from a taxi driver a considerable time before. He found the girl and his brother in bed together and waited until they arose, at which time she cooked breakfast for them and they played some records. Some three to four hours later and after the arrival of his sister, the appellant wrote a letter to his mother stating that he was going to shoot his brother and, about ten minutes thereafter, during a discussion with his brother about whether a door to the apartment should be opened or closed, he shot his brother, by his own admission at the trial, at least once. The deceased was shot three times, once in the right shoulder, once in the wrist and

once in the chest; the last shot lacerated the lung, causing massive hemorrhage and bringing on death. The appellant testified that he remembered firing only the one shot that struck the shoulder and claimed that his sister fired one shot. He did not remember a third shot. Neither the girl with whom he had been living nor his sister confirmed the fact that his sister had fired the pistol.

The only expert psychiatric testimony produced at the trial bearing on the mental condition of the appellant was that of Dr. William Cushard, Superintendent of Clifton T. Perkins State Hospital, a witness produced on behalf of the appellant. He testified in chief as to the details of the pre-trial evaluation of the appellant and said that his early life and environment would not have been productive of a well-balanced individual, that the girl was of extreme importance to him and that her loss certainly placed him under a terrific emotional strain.

On cross-examination in answer to the question whether at the time of the shooting, the appellant knew the difference between right and wrong and the nature and consequences of his act, Dr. Cushard replied, "Yes, sir. It is my opinion, and I might say there was no difference of opinion among us, our staff or Dr. Prado, that Mr. Fowler at the time of the alleged crime was not mentally ill and in the absence of mental illness I would certainly say that he was, had the capacity to be aware of the nature and consequence of his acts as applied to himself and knew the difference between right and wrong at that time."

Upon this state of the evidence, it is apparent that there was no sufficient evidence of appellant's being insane to require the submission of the issue of insanity to the jury; therefore, the giving of the instruction by the trial court to the jury even if wrong under *Bradford,* was not reversible error. *O'Connor v. State, supra; Lipscomb v. State,* 223 Md. 599, *Thomas v. State,* 206 Md. 575. Cf. *Bell v. State, supra.*

The language of Judge Henderson in *O'Connor v. State, supra,* at page 461 is particularly appropriate here:

> "1. The State contends that the instruction was correct, but argues that even if it was not there was no reversible error because the defense produced no

evidence of insanity sufficient to overcome the presumption of sanity. *Thomas v. State,* 206 Md. 575, *Lipscomb v. State,* 223 Md. 599. See also *Saldiveri v. State,* 217 Md. 412, *Dunn v. State,* 226 Md. 463 and *Hyde v. State,* 228 Md. 209. Hence the State contends there was legally insufficient evidence to warrant the submission of this issue to the jury. Upon a careful review of the evidence, we agree. Dr. Prado, the psychiatrist called by the State, testified that while the appellant had a personality disorder he had the capacity, both at the time of the offense and at the time of the trial, to distinguish right from wrong and to understand the nature and consequences of his acts as applied to himself. While he felt that the accused was a defective delinquent, this was because of his personality and not by reason of any mental illness. Dr. Boslow, the psychiatrist called by the appellant, testified that the appellant knew the difference between right and wrong and had the capacity to understand the nature and consequences of his acts. He testified that the appellant was, and always had been a responsible agent and had never been insane, not even under the *Durham* test [*Durham v. United States,* 214 F. 2d 862, (C.A. D.C.)] for criminal responsibility. He further testified that the accused was emotionally unstable but not psychotic. Thus the experts were in complete agreement, and there was no other evidence on the point."

In view of our opinion on this point, we do not reach the contention of the appellant as to the quantum of proof necessary to overcome the presumption of sanity. The factual situation here presented is insufficient to cause us to review the holding of *Bradford* even if we were inclined so to do.

With respect to the contention here raised that trial counsel was incompetent, the appellant first maintains that the plea of not guilty by reason of insanity was filed by trial counsel against the wishes of the appellant. The record is devoid of any evidence to sustain this point and, in fact, on cross-examination,

the testimony of the appellant shows that he knew of this plea at the time of his evaluation at Clifton T. Perkins State Hospital. There is nothing to show that he protested in any way or failed to consent to its filing. On the contrary, the record indicates that he concurred in the advice of his counsel as to the plea and felt it proper.

As a second point in this connection the appellant maintains that he was not advised by trial counsel of his right to refuse to testify in his own behalf. In *Stevens v. State,* 232 Md. 33, Judge Sybert said, for this Court, at page 39, "Where the accused has counsel, it is to be presumed that the accused has been informed of his rights and that when he voluntarily takes the stand he waives the protection of the constitutional and statutory provisions." There is nothing in this record to indicate that the accused was not fully informed of his rights by counsel. Moreover, where an accused is represented by counsel, ordinarily there is no requirement that the court should undertake to inform him of his rights. *Stevens v. State, supra, cert. den.* 375 U. S. 886.

It is further contended that the failure of trial counsel to move for judgment of acquittal precludes appellate review of the sufficiency of the evidence to convict appellant of murder in the first degree. We have reviewed the evidence in its entirety, although not required to do so under Rule 755 and it seems too clear for argument that there was legally sufficient evidence to support the verdict and that the State clearly met the burden of showing that the killing was willful, deliberate and premeditated. Cf. *Tull v. State,* 230 Md. 152. No charge of incompetence of counsel can be based upon failure to make a motion that the trial court could not properly have granted.

Lastly, the appellant bases his charge of incompetency in general terms upon the fact that trial counsel failed to request instructions or to take exceptions to the instructions given. As previously discussed in this opinion, the instruction of the trial court as to insanity was not prejudicial error. The appellant does not here contend that there was any other error in the charge of the trial court nor that such charge was in any way deficient. We fail to see any incompetency of counsel in this connection.

Presently appointed counsel for the appellant, recognizing the difficulty of the appellant's contentions with respect to the specific deficiencies above mentioned, maintains that these points taken collectively, are sufficient to make a farce of the trial and to deny due process of law. As previously stated, we have reviewed the entire record and we find that trial counsel did all that could reasonably be expected with a case where the evidence of the State was so overwhelming.

*Judgment affirmed.*