DONALD D. McCRACKEN *v.* STATE OF MARYLAND

[No. 89, September Term, 1967.]

*Decided January 11, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*I. Marshall Seidler* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Thomas Biddison, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On January 27, 1967 the appellant was convicted of robbery with a dangerous and deadly weapon by a jury in the Criminal Court of Baltimore, Judge James K. Cullen presiding, and sentenced to imprisonment for a term of 12 years. At arraignment he pleaded not guilty, not guilty by reason of insanity at the time of the commission of the offense and not guilty by reason of insanity at the time of the trial. At the close of the evidence offered by the State during the trial, after denying a motion for judgment of acquittal, the trial judge, over objection, heard the question of the appellant's sanity out of the presence of the jury. After considering evidence produced by the appellant, consisting of testimony of a psychiatrist and of the appellant, the trial judge found the evidence insufficient to raise a question in the minds of reasonable men whether the appellant was or was not insane, and did not permit the issue of insanity to be presented for the consideration of the jury. On appeal the appellant contends that the trial judge erred both in the procedure followed and the finding made.

Chapter 709, Acts of 1967, codified as Art. 59, sections 7-12, Md. Code (1964 Repl. Vol.), changed the standard for determining sanity with regard to criminal responsibility. We think it clear that the legislative intent was to have the provisions of the Act applicable to all cases tried on June 1, 1967 and thereafter but that they were not to have retroactive effect and we so stated in *League v. State,* 1 Md. App. 681, 685. Therefore the M'Naghten rule — the appellant's ability "to distinguish between right and wrong and understand the nature and consequences of his acts as applied to himself"—existing prior to June 1, 1967, was applicable to the appellant at his trial. *Bergin*

*v. State,* 1 Md. App. 74. *Rowe v. State,* 234 Md. 295 held that the M'Naghten rule was the standard for determining sanity at the time of the commission of the crime as well as at the time of trial. In *Bradford v. State,* 234 Md. 505, the Court of Appeals, confronted with the questions for the first time, determined which party—the prosecution or the defendant—had the burden of proof on the issue of insanity and which degree of proof—beyond a reasonable doubt or preponderance of the evidence—should be applied. In *Jenkins v. State,* 238 Md. 451, at page 463, the Court stated that the holdings in *Bradford* were:

> "(1) a man is presumed to have been sane and responsible for his acts at the time he committed a crime until there is adduced proof of his inability 'to distinguish between right and wrong and understand the nature and consequences of his acts as applied to himself' (the M'Naghten rule) sufficient to raise a doubt as to his sanity as defined in the minds of reasonable men ('Evidence of some undefined mental disorder or instability is insufficient proof to overcome the presumption of sanity'), and (2) when there has been offered proof of insanity so defined sufficient to overcome the initial presumption of the sanity of the accused the State must prove sanity, as well as the other elements of the offense charged beyond a reasonable doubt."

*Fowler v. State,* 237 Md. 508, held that the trial court should determine as a preliminary matter of law whether there has been offered evidence of insanity under the M'Naghten rule, sufficient, if believed, to raise a question in the minds of reasonable men whether the defendant is or is not insane. If the evidence is so sufficient, the question of the defendant's sanity is to be considered by the jury with instructions that the burden is on the State to prove the defendant sane beyond a reasonable doubt. If the evidence is not so sufficient, the issue should be withdrawn from the consideration of the jury. The Court followed the same rule in *Jenkins v. State, supra.* Finding that there was not sufficient evidence of insanity to rebut the presumption of sanity, it said, page 466, that "* * * the issues of

insanity now and then should not have been submitted to the jury." The appellant points out, correctly, that in both *Fowler* and *Jenkins* the issues were presented to the jury. In *Fowler*, although the trial court erred in instructing the jury that the burden was upon the defendant to prove insanity by a preponderance of the evidence, the Court agreed with the contention of the State that it was not reversible error "because there was no sufficient evidence of insanity adduced at the trial to require the submission of the issue of insanity to the jury and, therefore, the submission of that issue to the jury (which found him sane) was more than the appellant was entitled to." 237 Md. 512. In *Jenkins,* the Court said that whatever the reason the issues went to the jury, the appellant was not hurt. But despite the fact that in those cases the issues were before the jury, we think it clear that it is now established that the trial court should determine as a preliminary matter of law whether there has been offered evidence of insanity (under the M'Naughten rule as to cases tried prior to June 1, 1967 or under the provisions of chapter 709 of the Acts of 1967 as to cases tried on or after June 1, 1967) sufficient, if believed, to raise the question in the minds of reasonable men whether the defendant is or is not insane. Only when the court finds that there is such sufficient evidence are the issues of insanity at the time of the commission of the offense and at the time of the trial to be submitted to the jury. We think it logically follows that it is preferable that such evidence be adduced out of the presence of the jury to avoid any possible prejudice and to obviate the necessity, when the evidence is found to be insufficient, of instructing the jury that the issue is not before them and that they are to disregard such evidence in their deliberations of whether the State has proved the commission of the crime beyond a reasonable doubt. Of course, if the trial court finds the evidence to be sufficient, it should then be introduced before the jury with the proper instructions. The appellant urges that Article XV, § 5, of the Constitution of Maryland, providing that "In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction," requires the issues to be determined by the jury in any event and there-

fore precludes any preliminary decision by the trial court on evidence proffered out of the jury's presence. We do not agree. The logical conclusion of the appellant's contention is that any evidence offered in a case must fall to the jury as a matter of course. We are not persuaded to adopt the appellant's interpretation of the constitutional provision and it does not prevail in other matters. For example, it is clear that the trial court is vested with sound discretion relating to the reception or rejection of evidence. *Koprivich v. State,* 1 Md. App. 147. The admissibility of a confession is, preliminarily, a matter for the trial judge, and evidence with respect thereto is properly taken out of the presence of the jury. Only if the confession is found to be voluntary is the evidence presented to the jury. *Davis and Peterson v. State,* 1 Md. App. 581. The trial court must take the case from the jury upon motion for judgment of acquittal if the evidence is not legally sufficient to sustain a conviction. *Culver v. State,* 1 Md. App. 406. We see no error in the procedure followed by the trial judge in the instant case.

There remains the question whether the trial court erred in its finding that there had not been offered evidence of insanity under the M'Naghten rule, sufficient, if believed, to raise a question in the minds of reasonable men whether the appellant was or was not insane at the time of the commission of the offense and at the time of the trial. To show he was insane, the appellant offered the testimony of Dr. James Edgar Smith II, a psychiatrist, who testified that he examined the appellant on May 11, 1966 and had reviewed a report concerning him and had seen a report recently made by "one of the medical officers for the Supreme Bench." He arrived at a conclusion that the appellant "* * * does, indeed, suffer from a form of mental disorder which would be best characterized as a severe character disorder * * * with schizoid tendencies, passive aggressive traits, and antisocial and sexually deviant difficulties." Evidence of such mental disorder was insufficient proof under the M'-Naghten rule to overcome the presumption of sanity. On the contrary, we think it clear from the responses of the doctor on direct examination and cross-examination that he found that the appellant had the ability to distinguish between right and wrong and understand the nature and consequences of his acts

722

as applied to himself both at the time of the commission of the offense and at the time of the trial. The testimony of the appellant, in substance, was that he did not remember what happened at the time of the commission of the offense and that he was having emotional and personal problems and "everything was all confused." We feel that there was no evidence of insanity sufficient to rebut the presumption of sanity. The trial court, therefore, did not err in so finding and in refusing to allow the issues to go to the jury.

*Judgment affirmed.*