ROLAND T. WHITE *v.* STATE
OF MARYLAND

[No. 102, September Term, 1967.]

---

**1.** The convictions of Johnson and Magbee were sustained by this court on appeal. See *Johnson v. State*, 2 Md. App. 300.

168

*Decided February 15, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

· *William H. Meserole, Jr.,* for appellant.

*William B. Whiteford, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A.*

*Marshall, Jr., State's Attorney for Prince George's County,* and *Benjamin Wolmer, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

PER CURIAM.

Roland T. White, the appellant, complains of a conviction for unnatural and perverted sexual practices on Charles Thomas Spriggs and on Frederick Lee Spriggs in a jury trial in the Circuit Court for Prince George's County.

It appears that on the night of March 24, 1966, White, who had been drinking, went to the home of his friends, the Spriggs family, where he was a regular visitor and had often spent the night. White, that night, slept downstairs in a big chair while Mr. and Mrs. Spriggs also slept downstairs although they had a bed on the second floor. The Spriggs' children slept upstairs. Two of the Spriggs shared one bedroom—Charles, age 10, and Phillip shared one bed. Frederick, age 8, shared a second bedroom with his sister.

Both Charles and Frederick testified that during the night White committed unnatural sexual practice upon them. Frederick was told by White after the completion of the unnatural act not to inform anyone of what had occurred. Mrs. Spriggs learned of the incident from her son, Charles, after she had questioned him concerning any possible reason why White had been unusually attentive to the childern by purchasing them many gifts. After she talked with her husband Friday evening, a warrant was obtained on Saturday, March 26, and White was arrested the same day.

White testified that he had something to drink before arriving at the Spriggs' home, and the first thing he recalled after retiring for the night was a request by Mrs. Spriggs to bring her a glass of water the following morning. He was forty-one years of age, married but separated from his family. He was regularly employed working on the highways by Prince George's County. He regularly sent Fifty Dollars ($50.00) every two weeks for the support of his family. For two years immediately prior to the incidents involved in these proceedings, he maintained a home of his own and visited with the Spriggs family

frequently and helped with the chores around the house. For three years prior to establishing his own home he had been a regular resident of the Spriggs household. The written report of a psychiatrist was filed in the proceedings; the psychiatrist testified on White's behalf that he was a chronic alcoholic, suffered from syphilis and some seven years before had spent a short time at the Crownsville State Hospital, a mental institution. The psychiatrist further testified that White had poor judgment and when he was drunk he had no judgment at all. He further stated his opinion that at the time White "didn't know what he was doing and could not have formed an intent." Neither in the written report nor in oral testimony did the psychiatrist state that White did not know right from wrong nor that he failed to understand the nature and consequences of his act as applied to himself. From a colloquy between court and counsel it appears that counsel deliberately refrained from asking the crucial question although he declined to withdraw his plea of insanity.

White first contends that the trial court abused its discretion in receiving the testimony of the two young boys. The record shows that the boys were examined carefully by the State's Attorney, defense counsel and the court with regard to their capacity to testify, both stated unequivocally that they knew what it was to tell the truth and to tell a lie; and that they would be punished if they told a lie. White concedes that under *Saldiveri v. State,* 217 Md. 412, 419, 143 A. 2d 70, 74 and under *Horsey v. State,* 225 Md. 80, 169 A. 2d 457, 458 a child may testify within the discretion of the court. He alleges, however, that certain inconsistencies in the testimony show an abuse of this discretion. The inconsistencies pointed to the differences between the children's testimony and that of other persons on details not important to the proceedings. There were no inconsistencies in their testimony concerning the important details of the incidents described and we see no merit in the contention. See *Bell v. State,* 2 Md. App. 471.

As a subsidiary point, White claims that it was error for the trial judge to fail to instruct the jury that the children's testimony should be viewed in light of their tender age. No such instruction was requested under Maryland Rule 756(f). Al-

though we are permitted to review a plain error under 756(g) we do not think, under the circumstances of this case, that this was such an error.

White alleges error in the denial of his motion for a judgment of acquittal, pointing out again various minor differences in testimony of the several witnesses on matters not directly relevant to the charge. The story of each boy as to the essential facts was clear and unequivocal. We have repeatedly held that the testimony of the victim, if believed, is sufficient to support a verdict, *Britton v. State,* 2 Md. App. 285, 234 A. 2d 274, *Hutchinson v. State,* 1 Md. App. 362, 230 A. 2d 352. The victim in an unnatural sex case is not an accomplice, *Gregoire v. State,* 211 Md. 514, 128 A. 2d 243 and his testimony need not be corroborated. In addition, he alleges that under *Bell v. U. S.,* 185 F. 2d 302 (4th Cir. 1951) certiorari denied, 71 S. Ct. 492, 340 U. S. 930, 95 L. Ed. 671 the fact that the psychiatrist's statement concerning intent was before the jury and that there was no contrary evidence his verdict of acquittal should have been granted because of lack of intent. This completely overlooks the fact that in addition to the evidence showing that the defendant deliberately committed the acts there was also evidence that he had admonished one of the boys, Frederick, not to tell on him. Assuming, without deciding, that a specific intent to commit the act was required, we think this evidence was sufficient to make the issue a jury question.

White complains of the instructions of the court concerning the verdicts and criminal intent. Since there was no objection to the charge, for reasons stated above we will decline to consider them. He further contends that the court erred in refusing his request for an instruction that the burden of proof was on the state to prove sanity of the accused beyond a reasonable doubt. Under a number of recent cases decided by the Court of Appeals of Maryland and by this court, it is now well established every man is presumed sane but that if the accused produces sufficient evidence to raise a question in the minds of reasonable men, the state is required to prove the sanity beyond a reasonable doubt, but if the evidence of the accused does not rebut the presumption of sanity it is a matter for the court to decide and no jury issue is presented. See *Jenkins v. State,*

238 Md. 451, 209 A. 2d 616, *Fowler v. State,* 237 Md. 508, 206 A. 2d 802, *Bradford v. State,* 234 Md. 505, 200 A. 2d 150, *McCracken v. State,* 2 Md. App. 716, 237 A. 2d 87, *Dubs v. State,* 2 Md. App. 524, 235 A. 2d 764, *Bergin v. State,* 1 Md. App. 74, 227 A. 2d 357. Although the rule has since been changed by statute,[1] at the time of this trial the test of insanity was that the accused, either at the time of the trial or at the time of the offense, did not know the difference between right and wrong, and did not understand the nature and consequences of his acts as applied to himself, *Dubs v. State, supra.* It is apparent from the foregoing statement of facts that the trial judge quite properly determined that no jury issue was presented and removed the matter from the consideration of the jury. *Fowler v. State, supra.*

Finally White contends that the trial court committed error in refusing to permit him to prove that the prosecuting witnesses had killed a dog. On cross-examination of one of the prosecuting witnesses, White inquired about the dog incident which was denied by the witness. When the witnesses' mother was on the witness stand the trial judge refused to permit her to be asked about the incident. In *Rau v. State,* 133 Md. 613, 105 A. 867, and in *Giles v. State,* 229 Md. 370, 183 A. 2d 359 appeal dism. 83 S. Ct. 1102, 372 U. S. 767, 10 L. Ed. 2d 137, the Court of Appeals of Maryland laid down the rule that impeachment on collateral matters would not be permitted where the effect was to show specific acts of misconduct. For an excellent summary of the Maryland Law in this respect see *Giles v. Maryland,* 386 U. S. 66, 87 S. Ct. 793. We see no error.

*Judgments affirmed.*

---

1. As to trials begun after June 1, 1967, Laws of Md. 1967 Chapt. 790, codified in Code, Art. 59, Sec. 7-15.