ARTHUR EDWARD STRAWDERMAN *v.* STATE
OF MARYLAND
[No. 207, September Term, 1967.]

*Decided August 14, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James A. Ehrhart* for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Howard L. Cardin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found guilty at a court trial in the Crimi-

nal Court of Baltimore of robbery with a deadly weapon and assault. He was sentenced to imprisonment for a term of 15 years on the robbery conviction and for a term of 2 years on the assault conviction to run consecutively with the robbery sentence. His appeal from the judgments requires a construction of the provisions of Chapter 709, Acts of 1967 which are codified in Md. Code (1968 Repl. Vol.) as Art. 59, §§ 7-12, title—"Lunatics and Insane," subtitle—"Insanity as a Defense in Criminal Cases." Chapter 709 repealed former §§ 7-12 of Art. 59 and enacted new §§ 7-12 in lieu thereof. By § 2 of Chapter 709 its provisions were made applicable to all cases tried or scheduled for trial on and after 1 June 1967 and we have held that they were not to be retroactively applied. *League v. State,* 1 Md. App. 681, 685. As the appellant's case was tried on 20 June 1967, the provisions of Chapter 709 were applicable to it. Hereinafter §§ 7-12 of Art. 59 as were in effect prior to 1 June 1967 will be referred to as the "old" sections and as are in effect on and after that date as the "new" sections.

## COMPETENCY TO STAND TRIAL

### The Test

Under new § 7 the test for competency of an accused to stand trial is "whether such person is unable to understand the nature or the object of the proceeding against him or to assist in his defense."

### The Procedure

By new § 7 the lower court shall determine whether the accused is competent to stand trial "upon testimony and evidence presented on the record," whenever prior to or during trial, the accused alleges he is so incompetent or it so appears to the court. The court for good cause shown and after affording the accused an opportunity to be heard on his own behalf or through counsel may pass an order requesting an examination of the accused's competency to stand trial by the Department of Mental Hygiene and a full report of the findings shall be forwarded to the court, the State's Attorney and to counsel for the defendant. "If the court after receiving testimony and evidence determines that the defendant is competent to stand trial within

the meaning of this section (new § 7), the trial shall commence as soon as practicable or, if already commenced, shall continue. The court may in its discretion at any time during the trial and until the verdict is rendered, reconsider the question of competency of the defendant to stand trial as otherwise provided in this section." [1]

## RESPONSIBILITY FOR CRIMINAL CONDUCT

### The Test

The test of responsibility for criminal conduct is set forth in new § 9(a):

> "A defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct as a result of mental disease or defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

This, in every substantial detail and almost word for word, is the American Law Institute test contained in § 4.01 of the Model Penal Code.[2] It replaces, in Maryland, the test of re-

---

1. The procedure in the event the accused is found not competent to stand trial is set forth in new § 8.

2. In *United States v. Chandler*, 393 F. 2d 920, the United States Court of Appeals for the Fourth Circuit declared that the American Law Institute test strikes the right balance between cognition, on which *M'Naghten* was grounded, and volition, without creating the misunderstandings resulting from *Durham* (214 F. 2d 862). "[I]t demands an unrestricted inquiry into the whole personality of a defendant who surmounts the threshold question of doubt of his responsibility. * * * Its verbiage is understandable by psychiatrists; it imposes no limitation upon their testimony, and yet, to a substantial extent, it avoids a diagnostic approach and leaves the jury free to make its findings in terms of a standard which society prescribes and juries may apply." But the court warned: "There should be room for adaption to the exigencies of particular cases and still larger room for constructive innovation and improvement."

sponsibility for criminal conduct previously followed—that enuncited in *M'Naghten Case*, 8 Eng. Rep. 718 (1843) — the ability of the accused to distinguish between right and wrong and to understand the nature and consequences of his acts as applied to himself. *Bergin v. State*, 1 Md. App. 74.

*The Procedure*

The procedure for raising the defense that an accused was not responsible for his criminal conduct is provided in new § 9(b) :

> "When it is desired to interpose the defense of insanity on behalf of one charged with the commission of a crime the defendant or his counsel shall at the time of pleading to the warrant, indictment or information unless the court for good cause shown shall allow a later plea, file a plea in writing in addition to the plea or pleas otherwise required or permitted by law, alleging that the defendant was insane at time of the commission of the alleged crime. * * * At the trial of any case where there has been theretofore filed a plea of insanity at the time of the commission of the crime, the court shall direct the jury to render a special verdict on the sanity of the defendant at the time of the alleged crime. No such verdict as to insanity of the defendant at the time of the alleged crime shall be directed or accepted unless a plea in writing alleging that the defendant was insane at the time of the commission of the alleged crime shall have been filed by the defendant or his counsel." [3]

It also provides that when such plea of insanity has been entered the court "* * * shall have full power and authority to order an examination of the mental condition of such person by the Department of Mental Hygiene." [4]

---

**3.** Md. Rule, 720 provides: "An accused may plead not guilty, not guilty by reason of insanity as provided by statute, guilty, or with the consent of the court, *nolo contendere.*"

**4.** The disposition of a defendant found not guilty by reason of insanity at the time of the commission of the crime is provided by new §§ 11 and 12.

We think that Chapter 709 of the Acts of 1967 establishes a clearly different test for competency to stand trial from that which it establishes for responsibility for criminal conduct and that the procedure for determining competency to stand trial is clearly different from that to determine responsibility for criminal conduct. The sole issue of competency to stand trial is not raised by a plea [5] and its determination is a matter resting exclusively in the court. Of course, in a jury trial, evidence with regard to it should be received out of the presence of the jury. On the other hand, the defense that the accused was not responsible for his criminal conduct must be raised by a plea alleging that he was insane at the time of the commission of the alleged crime. The plea shall be filed at the time of pleading to the warrant, indictment or information, unless the court for good cause shown allows a later plea. It shall be made in writing.[6]

Under the law as it existed prior to 1 June 1967 questions as to which party—the prosecution or the defendant—had the

---

5. Under old § 7 the accused could plead not guilty by reason of insanity at the time of the commission of the alleged crime and/or not guilty by reason of insanity at the time of the trial. Each was determined under the standard of the M'Naghten rule. *Rowe v. State*, 234 Md. 295. New § 10, relating to the time of forwarding the Department of Mental Hygiene's reports as to insanity at the time of the commission of the offense and competency to stand trial, recognizes that the issue of competency to stand trial is not raised by plea. However when a plea of insanity at the time of the commission of the offense is filed, the report shall also relate to competency to stand trial.

6. In a jury trial the sanction for failure to file the plea in writing is specifically provided by new § 9(b). In such trial, when such a plea is filed in writing, the court shall direct the jury to render a special verdict on the sanity of the defendant at the time of the alleged crime. But no such verdict "shall be directed or accepted" unless the plea in writing was filed. Compare old § 7. No sanction for failure to file the plea in writing is provided in a court trial, but the statute clearly states that the defendant or his counsel " * * * shall * * * file a plea in writing in addition to the plea or pleas otherwise required by law, alleging that the defendant was insane at the time of the commission of the alleged crime." We think it apparent that this language applies to both trial by the court and trial by jury.

burden of proof on the issue of insanity and as to which degree of proof—beyond a reasonable doubt or preponderance of the evidence—should be applied were first resolved in *Bradford v. State,* 234 Md. 505. In *Jenkins v. State,* 238 Md. 451, the Court stated that the holdings in *Bradford* were:

> "(1) a man is presumed to have been sane and responsible for his acts at the time he committed a crime until there is adduced proof of his inability 'to distinguish between right and wrong and understand the nature and consequences of his acts as applied to himself' (the M'Naghten rule) sufficient to raise a doubt as to his sanity as defined in the minds of reasonable men ('Evidence of some undefined mental disorder or instability is insufficient proof to overcome the presumption of sanity'), and (2) when there has been offered proof of insanity so defined sufficient to overcome the initial presumption of the sanity of the accused the State must prove sanity, as well as the other elements of the offense charged beyond a reasonable doubt."

This Court applied the rules of law enunciated in *Bradford,* where there was a court trial, to a jury trial in *McCracken v. State,* 2 Md. App. 716. We said at 720:

> "[W]e think it clear that it is now established that the trial court should determine as a preliminary matter of law whether there has been offered evidence of insanity (under the M'Naghten rule as to cases tried prior to June 1, 1967 or under the provisions of chapter 709 of the Acts of 1967 as to cases tried on or after June 1, 1967) sufficient, if believed, to raise the question in the minds of reasonable men whether the defendant is or is not insane. Only when the court finds that there is such sufficient evidence are the issues of insanity at the time of the commission of the offense and at the time of the trial to be submitted to the jury. We think it logically follows that it is preferable that such evidence be ad-

> duced out of the presence of the jury to avoid any possible prejudice and to obviate the necessity, when the evidence is found to be insufficient, of instructing the jury that the issue is not before them and that they are to disregard such evidence in their deliberations of whether the State has proved the commission of the crime beyond a reasonable doubt. Of course, if the trial court finds the evidence to be sufficient, it should then be introduced before the jury with the proper instructions."

See also *White v. State,* 3 Md. App. 167, 171. Inasmuch as insanity, as defined in new § 9(a), is not the test in determining competency to stand trial under new § 7, the rationales of *Bradford* and *McCracken* are not apposite to such determination. With regard to competency to stand trial under new § 7, we think that the court, in whom the final determination of the matter rests, must determine beyond a reasonable doubt that the accused is able to understand the nature or object of the proceeding against him and to assist in his defense. But we think that the rationales of *Bradford* and *McCracken,* although not decided under Chapter 709, Acts of 1967, are applicable to a determination of insanity as defined in new § 9(a). Therefore the rule as to cases tried on or after 1 June 1967 is:

> (1) a man is presumed to have been responsible for criminal conduct and sane at the time of such conduct until, after the filing of a proper plea, there is adduced proof that he lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law as a result of mental disease or defect ("mental disease or defect" do not include an abnormality manifested only by repeated or otherwise anti-social conduct) sufficient to raise a doubt as to his sanity as defined in the minds of reasonable men, and (2) when there has been offered proof of insanity so defined sufficient to overcome the initial presumption of sanity of the accused the State must prove sanity, as well as the other

elements of the offense, charged beyond a reasonable doubt.

So when a plea has been filed in writing alleging that the accused was insane at the time of the commission of the alleged crime, the court should determine preliminarily whether the proof adduced in support thereof [7] is sufficient to raise a doubt as to the sanity of the accused, as defined, in the minds of reasonable men. If it finds that it is not, the State has no further burden with respect thereto and, in a jury trial, the question is not submitted to the jury. If the court finds that the proof adduced was sufficient to surmount the threshold question of doubt as to the accused's responsibility, the State has the burden of convincing the trier of facts that the accused was sane, and, in a jury trial, evidence on the issue should then be introduced before the jury with proper instructions.

The indictments under which the appellant was charged were filed on 10 April 1967. On 18 April, when he was arraigned, no plea was made but a pre-trial medical examination was ordered at the request of appellant's counsel. The examination was made by the Medical Service to the Supreme Bench and the report was submitted under date of 5 June. The case came on for trial on 20 June. Counsel for the appellant reviewed the report of examination and the appellant, through his counsel, orally pleaded to each indictment as follows: "The plea is not guilty by reason of insanity." He elected a court trial. The defense offered in evidence only the Summary and Impression of the Medical Officer, dated 5 June 1967 which accompanied the full report of examination made and produced no other evidence on the issue. The court found the appellant to be sane and competent to stand trial. A plea of not guilty to each indictment was then entered and a trial by the court being elected, the cases proceeded to trial.

On appeal the appellant contends that the trial court erred "in its refusal to accept a plea of not guilty by reason of insanity." He urges that it was incumbent upon the court, at his request, to order a further examination of his mental condi-

---

7. In a jury trial such proof should be presented out of the presence of the jury.

tion by the Department of Mental Hygiene as such part of the report of examination made by the Medical Officer of the Medical Service to the Supreme Bench which he offered in evidence did "not satisfactorily comply with the insanity law of the State of Maryland whereby it must be shown that the defendant, at the time of the commission of an offense did not have capacity and reason sufficient to enable him to distinguish between right and wrong and understand the nature and consequences of his acts."

The record is clear that the trial court did not refuse to accept a plea of not guilty by reason of insanity. It accepted it, even though it was not in writing, considered it and made a finding that the appellant was sane. We feel it clear from the remarks of the trial judge, who, it is apparent from the record, made his finding under new §§ 7-12, that the finding went to the sanity of the appellant at the time of the commission of the alleged offense. The court also found that the appellant was competent to stand trial, although we do not think that this issue was raised or if raised that it was pursued. Counsel said in his argument to the trial court, "Now, the only thing that at least I, as counsel for the Defendant am not sure of is whether this man was insane at the time of the offense." It is correct that the report of the Medical Officer received in evidence did not state that the appellant was sane under the M'Naghten test, to which we assume the appellant refers in his brief, but that was not the test applicable to him. The report before the court contained the following:

> "This patient had a clinical psychiatric examination and psychological testing done at this office. In addition, reports from Crownsville State Hospital and Meadowbrook New York General Hospital were reviewed. The patient has no history of a psychotic illness. The diagnostic impression is sociopathic personality disturbance with strong anti-social reaction with underlying schizophrenic tendencies.
> Under the Maryland Law this patient has to be regarded a responsible agent. This patient appears capable of assisting counsel in his own defense, but he is

very negativistic, uncooperative, and unreliable, and because of this he may try to cause difficulties."

There was no other evidence adduced on the issue, although the appellant was not denied an opportunity to be heard on his own behalf. We agree that the evidence was not sufficient to raise a doubt in the minds of reasonable men as to the sanity, as defined, of the accused. The report, dated subsequent to 1 June 1967, showed that the appellant had to be regarded as a responsible agent "under the Maryland Law." Therefore, he did not lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law as a result of mental disease or defects and he was sane under new § 9(a). While his history showed repeated criminal or otherwise anti-social conduct, abnormality so manifested, without more, is not included in the terms "mental disease or defect." As this evidence was not sufficient to surmount the threshold question of the appellant's responsibility and as there was no other evidence adduced, there was no further burden on the prosecution. And we cannot say that the court was clearly erroneous in finding that the appellant was competent to stand trial upon evidence on the record. It could properly find from the report that he was able to understand the nature or object of the proceeding against him and the report stated that he appeared "capable of assisting counsel in his own defense." In the circumstances the trial court did not abuse its discretion in refusing to order a further examination of the appellant by the Department of Mental Hygiene. We find no error requiring reversal in the procedure followed by the trial court, in its rulings or in its findings.

## REMOVAL

The appellant also contends that the trial court erred in refusing to grant "a change of venue." Prior to trial counsel for the appellant made an oral request for removal of the case for trial to some other court. The appellant did not comply with Md. Rule, 542a, made applicable to criminal proceedings by rule 738a, in that he did not suggest in writing under his oath that he could not have a fair and impartial trial in the court

in which his trial was pending. In any event, as the offenses of which he was charged were not punishable by death, it was necessary that he make it satisfactorily appear to the court that such a suggestion was true or that there was reasonable ground for it. Md. Rule, 738b. He did not do so. Counsel gave as the ground for the request that on 22 March several photographs had appeared in the local newspapers. But no evidence was offered on the matter and the appellant made no showing that he had been prejudiced. *Benton v. State,* 1 Md. App. 647. The court said it had never heard of the case before and had no knowledge of the alleged facts reported in the press. It stated that if a court trial was desired the motion was denied; if a jury trial was requested the matter would be explored on *voir dire.* The appellant elected a court trial. We find no abuse of discretion by the trial court in refusing the request for a change of venue. See *McLaughlin v. State,* 3 Md. App. 515.

*Judgments affirmed.*