Sterling E. DORSEY, Frederick H. Stewart, Eliezer Mason, Individually and on behalf of all others similarly situated, Appellees,

v.

Neil SOLOMON, in his official capacity, as Secretary of Health and Mental Hygiene of the State of Maryland, Gary W. Nyman, in his official capacity, as Acting Commissioner of Mental Hygiene of the State of Maryland, Jay A. Lebow, in his official capacity, as Acting Superintendent of the Clifton T. Perkins Hospital Center, David L. Cahoon, in his official capacity as Associate Judge of the Circuit Court of Montgomery County, Albert L. Sklar, in his official capacity as Associate Judge of the Supreme Bench of Baltimore City, James A. Perrott, in his official capacity as Associate Judge of the Supreme Bench of Baltimore City, individually and on behalf of all others similarly situated, and Alan H. Murrell, in his official capacity as Public Defender of the State of Maryland, Appellants.

No. 78–1667.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1979.

Decided July 25, 1979.

Thomas E. Plank, Asst. Atty. Gen., Baltimore, Md. (Francis B. Burch, Atty. Gen. of Maryland, Steven P. Resnick, Asst. Atty. Gen., Baltimore, Md., on brief), for appellants.

Albert J. Matricciani, Jr., Legal Aid Bureau, Inc., Baltimore, Md. (Carol E. Smith and Lawrence B. Coshnear, Legal Aid Bureau, Inc., Baltimore, Md., on brief), for appellees.

Before BUTZNER and RUSSELL, Circuit Judges, and FIELD, Senior Circuit Judge.

BUTZNER, Circuit Judge:

The issue in this appeal of a class action brought under 42 U.S.C. § 1983 is whether Maryland must now afford judicial commitment hearings to persons summarily committed to state mental hospitals after being acquitted of criminal charges on the ground of insanity.[1] We affirm the district court's ruling that Maryland denies these persons their constitutional rights by placing on them the burden of proving their fitness for release. We believe, however, that the state's release procedures—apart from the allocation of the burden of proof—provide an adequate remedy for persons who have been committed without a hearing.

I

Maryland has adopted the American Law Institute's formulation of the insanity defense. To interpose the defense, a defendant must file a written plea alleging that he was insane at the time the crime was committed. If the defendant then introduces at trial evidence sufficient to raise a doubt about his sanity, the state must bear the burden of proving sanity—as well as all other elements of the alleged offense—beyond a reasonable doubt. Maryland Code Ann. art. 59, § 25 (Repl.Vol.1972); see Riggleman v. State, 33 Md.App. 344, 364 A.2d 1159, 1163–64 (1976); Strawderman v. State, 4 Md.App. 689, 244 A.2d 888, 893 (1968).

When a defendant is acquitted by reason of insanity, the court has discretion to order him confined for examination. If state mental health officials report that he would, once released, "be a danger to himself or the safety of the person or property of others," the court may order him committed to a mental hospital without a hearing. Md. Code Ann. art. 59, § 27 (Repl.Vol. 1972); see Morris v. State, 11 Md.App. 18, 272 A.2d 663, 666 (1971).

At least three months after his confinement for examination, the inmate may apply for judicial release. Md. Code Ann. art. 59, §§ 15, 27 (Repl.Vol.1972). If the hospital reports that he is no longer dangerous and the state shows no cause for his continued confinement, the court must release him. If the hospital or the state resists his release, the inmate can request a hearing on his mental condition. The hearing proceeds like a civil jury trial, except that the inmate can obtain the assistance of appointed counsel. The state need not prove that the inmate is dangerous. Instead, the inmate bears the burden of proving his fitness for release. Salinger v. Superintendent, 206 Md. 623, 112 A.2d 907 (1955); Daniels v. Superintendent, 34 Md.App. 173, 366 A.2d 1064 (1976).

In summary, Maryland law provides that after a criminal defendant has raised only a reasonable doubt about his sanity and the state has failed to prove him sane, he may be committed summarily to a mental institution on the basis of the examining officials' report.[2] If the state chooses to hold him, he can secure his release only by proving that he is not dangerous.

During the course of the proceedings in the district court, the parties consented to a decree providing that criminal defendants subsequently acquitted on insanity grounds would receive judicial commitment hearings with certain procedural rights within 60 days after receipt of their mental evaluation reports. The parties were unable to agree, however, whether similar hearings should be accorded inmates presently committed as the result of earlier summary proceedings. Addressing this controversy, the district court held that persons confined without hearings must now receive judicial commitment hearings with the right to appointed counsel. The court found that the

---

1. The district court's principal opinion is reported at 435 F.Supp. 725 (D.Md.1977). In later unreported opinions, the court resolved issues not raised on appeal, approved modifications of a consent decree, and stayed those parts of its decree that the state now appeals.

2. This feature of Maryland criminal law distinguishes this case from cases arising in states that require criminal defendants to prove the insanity defense by a preponderance of the evidence. See, e. g., In re Franklin, 7 Cal.3d 126, 145–47 & n.12, 101 Cal.Rptr. 553, 565–66 & n.12, 496 P.2d 465, 477–78 & n.12 (1972).

release procedures available to these inmates were not an adequate substitute for new commitment hearings.[3] The state appeals this provision of the court's judgment.

Although the parties have characterized the issue on appeal as involving the retroactive application of the district court's judgment, the commitment hearings ordered by the court are not truly retroactive proceedings to determine whether each inmate was committable at the time he was confined. Like Maryland's judicial release hearings, the commitment hearings would address each inmate's current propensity to harm himself or others. The release and commitment hearings differ, however, with respect to the allocation of the burden of proof. Under the procedures ordered by the district court, the state must prove that the inmate is dangerous. Under the state's statutory release procedures, by contrast, an inmate who has been confined without the benefit of a hearing cannot secure release unless he carries the burden of proving that he is not dangerous.

## II

In *Baxstrom v. Herold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), the Supreme Court held that the equal protection clause bars a state from committing a prisoner who is nearing the end of his term to a mental institution without affording him a hearing similar to the hearing necessary for involuntary civil commitment of the mentally ill. Later the Court recognized with apparent approval that the *Baxstrom* principle had been extended by lower courts to commitment following an insanity acquittal. *See Jackson v. Indiana*, 406 U.S. 715, 724, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972). Recently, in *Addington v. Texas*, —— U.S. ——, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), the Court reaffirmed that involuntary commitment to a mental institution "constitutes a significant deprivation of liberty that requires due process protection." 99

S.Ct. at 1809. *Addington* dealt with the standard of proof required for civil commitment, and in doing so, it implicitly placed on the state the burden of proving that the person to be committed has a propensity to harm himself or others.

These decisions, we believe, establish that Maryland's procedures for retaining custody of persons who have been acquitted of criminal charges by reason of insanity are constitutionally inadequate. Pointing out that Maryland provides counsel to persons civilly committed, the district court correctly ruled that the commitment without counsel and without a hearing of persons acquitted of criminal charges by reason of insanity offends both the equal protection and due process clauses of the fourteenth amendment. The state's procedures for release do not remedy these constitutional defects because they shift to each inmate the burden of proving his fitness for release. While it is proper to place this burden on inmates committed in accordance with constitutionally adequate procedures, it is fundamentally unfair to require inmates whom the state has never proven committable to bear the burden of proving their suitability for release.

The state relies on *Kovach v. Schubert*, 419 U.S. 1117, 95 S.Ct. 799, 42 L.Ed.2d 817, *dismissing for want of substantial federal question* 64 Wis.2d 612, 219 N.W.2d 341 (1974), and *Bolton v. Harris*, 130 U.S.App. D.C. 1, 395 F.2d 642 (1968), for the opposite conclusion, but both cases are inapposite. In *Kovach*, the Supreme Court summarily affirmed a judgment that required an inmate committed without proper procedures to bear the burden of proving his fitness for release. The facts of that case are special, however, because Kovach had stipulated at his criminal trial that he was insane when he committed his offense. 219 N.W.2d at 342. Furthermore, we believe that the Court's subsequent, reasoned opinion in

---

**3.** The district court also held that persons subsequently acquitted by reason of insanity were entitled to counsel at their commitment hearings, but the court rejected their claim for trial by jury, independent psychiatric evaluation at state expense, an elevated standard of proof, and mandatory periodic review hearings. No party has appealed these parts of the court's decision.

*Addington v. Texas,* —— U.S. ——, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), is better authority than the tacit affirmance in *Kovach.* We therefore need not treat the case as controlling. *See Mandel v. Bradley,* 432 U.S. 173, 176–77, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977).

*Bolton* gave prospective effect to a decision invalidating procedures for mandatory commitment after an insanity acquittal. The opinion gave only cursory attention to the question of retroactivity, and *Waite v. Jacobs,* 475 F.2d 392, 397–400 (D.C.Cir. 1973), shows that subsequent Supreme Court decisions cast doubt upon the part of *Bolton* that requires inmates whom the state has never proven committable to bear the burden of proof at a release hearing. Furthermore, *Bolton* treated the issue as a simple question of retroactivity. It did not explore alternative kinds of relief that we consider in this opinion.

### III

To provide redress for about 188 inmates committed under Maryland's summary procedures, the district court directed the state to provide them with new commitment hearings. At these hearings each inmate would receive the assistance of appointed counsel, and the state would bear the burden of showing that the inmate presently was dangerous.

Although the hearings ordered by the district court are not truly retroactive because they deal with each inmate's present condition, we believe that ordinary retroactivity principles demonstrate the propriety of the sort of remedy contemplated by the court. In *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971), Mr. Justice White, speaking for a plurality of the Court, succinctly explained these principles:

> Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retro

active effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances.

The principles developed in criminal cases apply in this case because involuntary commitment, like incarceration, "is a deprivation of liberty which the State cannot accomplish without due process of law." *O'Connor v. Donaldson,* 422 U.S. 563, 580, 95 S.Ct. 2486, 2496, 45 L.Ed.2d 396 (1975) (Burger, C. J., concurring); *see Addington v. Texas,* —— U.S. ——, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Lack of counsel and the denial of a hearing substantially impaired the truth-finding function of the summary procedures by which these inmates were committed. *Cf. Arsenault v. Massachusetts,* 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (giving retroactive effect to the right to counsel at preliminary hearing). Consequently, we conclude that the inmates are entitled to a hearing at which they will receive the assistance of counsel.

The state protests the heavy burden that implementation of the district court's decree will place on its judicial system, the Department of Mental Hygiene, and the public defender. This impact does not bar relief, *Williams,* 401 U.S. at 653, 91 S.Ct. 1148, but it is a factor that should be considered in fashioning the remedy. Two relatively minor modifications of the district court's decree will reduce the burden on the state without impairing relief to the inmates.

The district court found that inmates who have been properly committed, or someone in their behalf, could be expected to initiate release proceedings, 435 F.Supp. at 740, and this finding is not challenged on appeal. Nothing in the record indicates that the other inmates could not initiate requests for new commitment hearings if they were given notice of the court's decree. Therefore, on remand the district court should modify its decree to require new hearings for only those inmates who request them.

The court also should modify the decree so that the state can substitute the release procedures in Md. Code Ann. art. 59, § 15 for the new commitment hearings previously ordered, provided that the state assumes the burden of proof in hearings requested by inmates who were committed improperly. Since state law already gives these inmates the right to request a hearing and the assistance of counsel, the only significant change necessary to conform the release procedure with the substance of the court's decree is a shifting of the burden of proof from the inmates to the state.[4] Resort to modified § 15 hearings in lieu of the commitment hearings ordered by the district court, therefore, would place on the state's judicial and administrative systems almost no demands other than those already imposed by state law.

## IV

Article 59, § 28, of the Maryland Code authorizes the court that committed an inmate to order his release on reasonable conditions. Anytime within five years after such a release, the court can recommit the patient if it finds that he breached the terms of his release and that he presents a danger to himself or others. The district court ordered new commitment hearings for about 80 patients subject to conditional release who previously had been committed summarily after their insanity acquittals. The state protests that these hearings, like those ordered for persons still confined, will overburden its judicial and administrative systems. The state also raises a point that was not presented to the district court. It contends that the limited constraints imposed by conditional release do not justify the burden placed on the state by the order

requiring new commitment hearings. To avoid this burden, the state has given assurances in its brief that all recommitment hearings for patients on conditional release will provide the procedural safeguards required by the district court.

■ We agree with the district court that the class members who have been conditionally released are entitled to some procedural protection. Although these patients are no longer confined, the current restraints on their liberty are predicated on a finding of dangerousness that was made without due process of law. It does not follow, however, that they are entitled to the same relief granted to the members of the class who are still in custody. The difference in the status of each group should be taken into account. On remand, therefore, the court should incorporate into its decree the state's proposal concerning recommitment hearings. The court then should consider whether this innovation provides an adequate remedy for patients conditionally released without placing an unwarranted burden on the state's judicial and administrative resources. On the record before us, which includes little evidence about the conditions usually associated with release, we cannot say whether the conditions—apart from the possibility of recommitment—place on the patients restraints onerous enough to warrant further relief.[5]

## V

The district court ruled that the standard of proof appropriate in commitment hearings was proof by a preponderance of the evidence. We note, however, that the Supreme Court's intervening decision in *Add-*

4. The judicial release statute does not expressly allocate the burden of proof, but an earlier version was construed to place the burden on the inmate. *See Salinger v. Superintendent,* 206 Md. 623, 112 A.2d 907, 910 (1955). As we mentioned in Part II, this construction of the statute is reasonable as applied to a person committed by procedures that afforded him due process of law. As the district court pointed out, however, this allocation of the burden of proof perpetuates the denial of due process to a person whose initial commitment was constitu-

tionally invalid. *See* 435 F.Supp. at 741. An exception to the general construction of the statute that accommodates the special problem in the latter situation would eliminate the need for the 188 new commitment hearings ordered by the district court.

5. *Cf. Carafas v. LaVallee,* 391 U.S. 234, 237–38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (parole); *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963) (same).

*ington v. Texas,* —— U.S. ——, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), disapproves use of this standard in civil commitment proceedings. The Court held that the due process clause requires proof by at least clear and convincing evidence. Although no appeal was taken from the district court's ruling, the court may reconsider on remand the question of the proper standard of proof. We recognize differences between the Maryland and Texas procedures, and we express no view on the application of the *Addington* requirement to this case.

The judgment is affirmed in part, and the case is remanded for further proceedings consistent with this opinion. The appellees shall recover their costs.