Sterling E. DORSEY, Frederick H. Stewart, Eliezer Mason, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Neil SOLOMON, in his official capacity as Secretary of Health and Mental Hygiene of the State of Maryland, Benjamin D. White, in his official capacity as Acting Commissioner of Mental Hygiene of the State of Maryland, Wilfried R. Freinek, in his official capacity as Acting Superintendent of the Clifton T. Perkins Hospital Center, David L. Cahoon, in his official capacity as Associate Judge of the Circuit Court for Montgomery County, Albert L. Sklar, in his official capacity as Associate Judge of the Supreme Bench of Baltimore City, Shirley B. Jones, in her official capacity as Associate Judge of the Supreme Bench of Baltimore City, and James A. Perrott, in his official capacity as Associate Judge of the Supreme Bench of Baltimore City, Individually and on behalf of all others similarly situated, Defendants.

Civ. No. H–75–1406.

United States District Court,
D. Maryland.

July 26, 1977.

Alan S. Davis and Albert J. Matricciani, Jr., Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

Judith K. Sykes and Bernard A. Raum, Asst. Attys. Gen., Baltimore, Md., for defendants.

ALEXANDER HARVEY, II, District Judge:

In this class action,[1] plaintiffs ask this Court to declare that §§ 27 and 28 of Article 59, Md.Ann.Code, which establish procedures in Maryland for the involuntary commitment of those persons found not guilty by reason of insanity at a criminal trial (hereinafter termed "insanity acquittees"), violate the due process and equal protection clauses of the Fourteenth Amendment.[2] Plaintiffs also ask that this Court recognize by way of a declaratory judgment various rights which must be granted to them before the State may confine them against their will.

The amended complaint names as defendants the following State officials in their official and representative capacities: Neil Solomon, Secretary of Health and Mental Hygiene; Benjamin D. White, Acting Commissioner of Mental Hygiene; Wilfried R. Freinek, Acting Superintendent of the Clifton T. Perkins Hospital Center; David L. Cahoon, Associate Judge of the Circuit Court for Montgomery County; and Albert

---

1. By Order dated July 29, 1976, a class was certified, consisting of (a) all persons who presently are or will be committed, pursuant to Article 59, § 27, Md.Ann.Code, to any mental health facility licensed by or under the jurisdiction of the State Department of Mental Hygiene, and (b) all persons who were committed pursuant to § 27 and who are or, during the pendency of this action, will be on conditional release pursuant to § 28 of Article 59.

2. Plaintiffs have been permitted to proceed in this case *in forma pauperis* and are represented by staff attorneys of the Legal Aid Bureau, Inc.

L. Sklar, Shirley B. Jones and James A. Perrott, Associate Judges of the Supreme Bench of Baltimore City.[3]

Plaintiffs Sterling E. Dorsey, Frederick H. Stewart and Eliezer Mason are presently involuntarily confined at Clifton T. Perkins Hospital, a state mental hospital. Each of these three plaintiffs had previously been charged with committing a crime in Maryland, had been found not guilty by reason of insanity, and had been committed pursuant to Article 59, § 27, which provides as follows:

§ 27. *Committal to Department of person found not guilty by reason of insanity; examination and report; confinement or release.*

A person who has been found not guilty of any crime by reason of insanity at the time of the commission of the act, in the discretion of the court, may be committed to the Department of Mental Hygiene for confinement in one of the facilities of the State for examination and evaluation to determine, by the standards applicable to civil admission proceedings under §§ 11 and 12 of this article, whether such person by reason of mental disorder would, if he becomes a free agent, be a danger to himself or to the safety of the person or property of others. Upon the basis of the report by the facility, and any other evidence before it, the court may in its discretion, direct that the person be confined in a facility designated by the Department for treatment. He shall at any time after three (3) months from the date of his confinement for examination and evaluation have the right to apply for his release pursuant to the provisions of § 15 of this article. Before a hearing on such application and petition shall be held the applicant shall present a copy of the application and petition to the State's attorney of Baltimore City or the county from which the defendant was committed. Upon a negative report by the facility,

the court having jurisdiction shall order the person promptly released unless good cause for a contrary determination as to dangerousness is shown by the State's attorney.

§ 28 of Article 59 provides as follows:

§ 28. *Conditional release of person committed pursuant to § 24 or § 27; recommittal.*

If the Department of Mental Hygiene is of the view that a person committed pursuant to §§ 24 or 27 of this article (except during the first ninety (90) days of commitment following a finding of not guilty by reason of insanity) not otherwise subject to release without condition, may be released on condition without danger to himself or to the safety of the person or property of others, it shall make application for the release of the person in a report to the court by which the person was committed and shall present a copy of the application to the State's attorney and the clerk of the court of the county from which the defendant was committed. The clerk of the court shall send a copy of the application to the last council (*sic*) for each person. If the court is satisfied that the committed person may be released on condition without danger to himself or to the safety of the person or property of others, the court shall order his release on reasonable conditions as the court determines to be necessary. If within five (5) years after the conditional release of a committed person the court shall determine, after hearing evidence, that the conditions of release have not been fulfilled and that his continued release on conditions constitutes by reason of mental disorder a danger to himself or to the safety of the person or property of others, the court shall forthwith order him to be recommitted.

On February 17, 1972, the State's Attorney for Montgomery County confessed a plea of not guilty by reason of insanity in

---

**3.** Alan H. Murrell, Public Defender of the State of Maryland, was also named as a defendant in the amended complaint, but was dismissed from this action by Order of this Court dated July 13, 1976.

plaintiff Dorsey's case. Judge David L. Cahoon of the Circuit Court for Montgomery County on that same date, without a separate hearing on the issue of Dorsey's present dangerousness, committed Dorsey to Clifton T. Perkins Hospital for treatment. On May 23, 1972, an evaluation report by the hospital staff was sent to Judge Cahoon, recommending that an order be entered for the continued confinement of Dorsey because he was, in the opinion of the staff, still dangerous. No post-evaluation hearing was ever held concerning Dorsey's mental condition or dangerousness, and no further Order of Court was entered.

On May 23, 1974, plaintiff Frederick H. Stewart, after a non-jury trial, was found not guilty by reason of insanity by Judge Albert Sklar of the Criminal Court of Baltimore City. Pursuant to § 27 of Article 59, he was committed without a hearing to the Department of Mental Hygiene for evaluation. On September 23, 1974, an evaluation by the staff of Clifton T. Perkins Hospital was filed with Judge Sklar, finding that Stewart was presently suffering from a mental disorder and posed a danger to others. No court hearing was ever held concerning Stewart's mental condition at the time or his dangerousness, and no further Order of Court was entered.

On April 23, 1975, plaintiff Eliezer Mason, after a non-jury trial, was found by Judge Shirley B. Jones of the Criminal Court of Baltimore City to be not guilty by reason of insanity and, pursuant to § 27, was committed without a hearing to the Clifton T. Perkins Hospital for evaluation. On July 25, 1975, the hospital staff reported that Mason was still dangerous and recommended further confinement. On July 30, 1975, without a hearing, Judge James A. Perrott, acting for Judge Jones, granted the institution permission to continue Mason's confinement. No further Order of Court was ever entered.

4. The parties have agreed that a three-judge court is not necessary to decide the issues presented because (1) the constitutionality of a state statute has been challenged without any prayer for the restraint of its enforcement,

In their amended complaint, the plaintiffs claim that §§ 27 and 28 of Article 59 and procedures followed thereunder by the State courts and by the State Department of Mental Hygiene deny them various rights guaranteed by the due process and equal protection clauses of the Fourteenth Amendment. In particular, the plaintiffs assert that Maryland law unconstitutionally permits the continued involuntary confinement of an insanity acquittees without a judicial hearing, and they seek a declaratory judgment which would recognize their right to such a hearing and their right to appropriate attendant procedures which would afford them due process of law.[4]

Following extensive discovery proceedings in this case, a partial consent decree was submitted by the parties and approved by this Court on July 29, 1976. This decree provided as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as to persons who will be admitted pursuant to provisions of the Maryland Code, Article 59, § 27 after the effective date hereof, as follows:

1. As used herein, standards for civil admission mean the standards set forth in Article 59, § 12 Maryland Code Annotated.

2. The Department of Health and Mental Hygiene shall submit to the Court the required evaluation report under Article 59, § 27 Maryland Code Annotated not later than thirty (30) days from the date of the Court's order directing evaluation and examination of the insanity acquitted person. The evaluation report shall contain a statement of whether or not the present condition of the insanity acquitted person is such that he meets each of the standards for civil admission and the factual basis for the statement. This report and all other Department of Health and Mental Hygiene records dealing in any respect with the insanity ac-

Wright, *Federal Courts*, 2d Ed., § 50 at 164, and (2) because, as discussed *infra*, the State has consented to be bound by the partial consent decree entered in this case. *See Gates v. Collier*, 501 F.2d 1291, 1296–99 (5th Cir. 1974).

quitted person, which are located in the facility in which the insanity acquitted person is under evaluation, upon request, shall be made available to counsel for such person in order for counsel to prepare for the hearing referred to in section 5 below. All other Department of Health and Mental Hygiene records dealing with the insanity acquitted person, located in State-operated mental health and retardation facilities outside the facility in which the insanity acquitted person is under evaluation, also shall be made available to counsel upon request.

3. No insanity acquitted person shall be confined for treatment pursuant to Article 59, § 27 Maryland Code Annotated without notice of at least (a) the exact date, time and place of a scheduled hearing to determine whether such person meets the standards for civil admission; and (b) the right to refuse medication which will adversely impair his ability to participate at the hearing. This notice shall be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded and, in no case, shall it be given more than seven (7) days after the required evaluation report is submitted to the Court.

4. The insanity acquittee and the State shall be afforded the benefit of all civil discovery rules pursuant to the Maryland Rules in connection with the hearing referred to in Section 5 below.

5. No insanity acquitted person shall be confined for treatment pursuant to Article 59, § 27 Maryland Code Annotated, without a prior judicial hearing to be held within sixty (60) days after receipt of the evaluation report. At the hearing, such person shall have the right at least (a) to be present; (b) to confront and cross examine adverse witnesses; (c) present witnesses and relevant evidence on his own behalf; and (d) have attendance of witnesses and the production of documents and/or other tangible evidence compelled.

6. This partial consent decree shall become effective at the same time the Court's final judgment herein becomes effective.

Pursuant to this decree, the State of Maryland has agreed, *inter alia*, to give an insanity acquittee a prompt judicial hearing before confinement under § 27. The State has further recognized the right of an insanity acquittee to be present at such hearing, to cross-examine witnesses, to present witnesses and other evidence in his own behalf and to compel the attendance of witnesses and the production of documents. However, the partial consent decree has not resolved all the issues raised by the plaintiffs in this case. The decree further provides as follows:

7. The following legal issues are not resolved by this partial consent decree and are expressly reserved for summary judgment decision by the Court:

(a) Whether plaintiffs and their class have a right to be represented by counsel of their choice or to mandatory assistance of appointed counsel, if indigent, at the judicial hearing established in paragraph 5 *supra*, and if so, whether plaintiffs shall have the right to receive notice of this right to counsel.

(b) Whether plaintiffs and their class have a right to elect a jury trial at the judicial hearing established in paragraph 5 *supra*.

(c) Whether plaintiffs and their class have a right to an independent psychiatric evaluation at the State's expense prior to the judicial hearing established in paragraph 5 *supra*.

(d) Whether the standard of proof at the judicial hearing established in paragraph 5 *supra* shall be at least proof by clear and convincing evidence.

(e) Whether plaintiffs and their class have a right to a mandatory periodic review hearing on their need for continued commitment upon the same terms and conditions as are and may further be established for the judicial hearing established in paragraph 5 *supra*.

(f) Whether plaintiffs and their class have a right to notice and retroactive hearings as described herein, based upon each class member's present mental condition and dangerousness.

Cross motions for summary judgment have been filed by the parties. After a review of the extensive briefs submitted by the parties and after hearing argument of counsel, this Court is satisfied that there is no genuine issue as to any of the facts material to a decision on the issues presented. Rule 56(c), F.R.Civ.P. At this stage of these proceedings, the Court must determine what rights are constitutionally required for insanity acquittees at the judicial hearing which the State has now agreed to give them.

The Court would further note that a decision on the pending issues would not dispose of this case. Certain other claims asserted in the amended complaint cannot be decided without an evidentiary hearing. Thus, the partial consent decree expressly reserved the following issues for later decision following an evidentiary hearing:

(a) Whether plaintiffs and their class, after being found to require indefinite confinement pursuant to Article 59, § 27, have a right to be initially confined in a less restrictive environment than a maximum security health hospital and maximum security units within general mental health hospitals, if such a less restrictive environment is consistent with their treatment needs, and if so, whether a finding on this issue should be made at the judicial hearing established in paragraph 5 *supra.*

(b) Whether plaintiffs and their class have a right to obtain full or conditional release without court approval at the direction of the Commissioner of Mental Hygiene, his authorized representative or a hospital superintendent.

**5.** A person who is involuntarily committed in civil proceedings for treatment as a mental patient is referred to herein as a "civil committee".

**6.** Besides insanity acquittees and civil committees, Maryland law also provides for the indeterminate confinement of defective delinquents. *See* Art. 31B, Md.Ann.Code.

## I

### *The Rights Claimed by Plaintiffs*

■ It is well established that involuntary commitment procedures, whether for insanity acquittees or civil committees,[5] must comport with due process of law. *E. g., O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). It is also equally well established that the equal protection clause applies to involuntary commitment proceedings. *E. g., Baxstrom v. Herold,* 383 U.S. 107, 113–115, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).

■ Plaintiffs contend that because personal liberty is at stake, the state must bear the burden of showing that any differences in the procedural protections afforded those indeterminately confined for treatment[6] are necessary to promote a compelling state interest.[7] However, the law in the Fourth Circuit would appear to be otherwise. In the recent case of *Dower v. Boslow,* 539 F.2d 969 (4th Cir. 1976), the Fourth Circuit held that the equal protection clause was not violated by Maryland law when it required a higher standard of proof in an administrative proceeding held to determine whether an individual should be civilly committed than it required in a judicial proceeding held to determine whether an individual was a defective delinquent. Although the Court did not specify which test was being applied, Judge Craven's reasoning and his citation of *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 24, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16 (1974) for the proposition that the "Equal Protection Clause does not require absolute equality or precisely equal advantages" indicates that the reasonable basis test was applied there and should be applicable here.

**7.** For a full discussion of the so-called "strict scrutiny" or "compelling state interest" test as compared to the "reasonable basis" test, see *Parker v. Mandel,* 344 F.Supp. 1068 (D.Md. 1972), at pages 1075–1080.

*See United States v. Ecker,* 177 U.S.App. D.C. ——, 543 F.2d 178, 196 (1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977).

### (a) *The right to appointed counsel*

█ The law is well established that an indigent has a right to be represented by appointed counsel at involuntary civil commitment hearings. *E. g., Heryford v. Parker,* 396 F.2d 393 (10th Cir. 1968); *Lynch v. Baxley,* 386 F.Supp. 378, 389 (M.D.Ala. 1974); *Bell v. Wayne County General Hospital,* 384 F.Supp. 1085, 1093 (E.D.Mich. 1974); *Sarzen v. Gaughan,* 489 F.2d 1076, 1085 (1st Cir. 1973); *Lessard v. Schmidt,* 349 F.Supp. 1078, 1097 (E.D.Wis.1972); *vacated and remanded on other grounds,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). As a result of a decision by a Maryland *nisi prius* court which the Attorney General has agreed to follow, it is now the law of Maryland that assistance of appointed counsel be provided to an indigent prospective civil committee pursuant to Regulation 10.04.03 of the State Department of Health and Mental Hygiene without the necessity that the individual in question make a specific request therefor. *Briggs v. Mandel,* Civil No. 54644 (Circuit Court of Baltimore City, Memorandum Opinion and Order dated February 28, 1975).

Because insanity acquittees face the same loss of personal liberty as civil committees and have the same need for counsel to safeguard their interests, this Court is satisfied that the requirements of both the due process clause and the equal protection clause call for the mandatory appointment of counsel in Maryland for indigent insanity acquittees. Moreover, since an insanity acquittee is likely to be under similar mental or emotional disabilities as a civil committee and since these disabilities would affect the capacity of such an individual to knowingly and intelligently waive his right to counsel, this Court is satisfied that such an appointment should be made for an indigent and notice thereof be given without the necessity that he make a formal request for same. This is the same procedure mandated for civil committees in Maryland by *Briggs v. Mandel, supra.*

█ Defendants' reliance on *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) is misplaced. These cases involved the more limited due process rights afforded a prisoner in proceedings for the revocation of parole or probation. The indeterminate deprivation of liberty of one not previously confined because of his mental condition requires the application of a higher constitutional standard, insofar as the question of one's right to counsel is concerned. This Court is satisfied that plaintiffs and the members of their class should be afforded the assistance of counsel at the judicial hearings to be held under the partial consent decree and that counsel should be appointed to represent them if they are indigent.

### (b) *The right to a jury trial*

█ Although many states provide a statutory right to a trial by jury at civil commitment proceedings, no court has ever held that due process of law *requires* trial by jury in such proceedings. *See Developments in the Law—Civil Commitment of the Mentally Ill,* 87 Harv.L.Rev. 1190, 1294 (1974). On the contrary, the pertinent authorities point to the opposite conclusion. In *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), the Supreme Court held that trial by jury in civil juvenile delinquency proceedings is not required by the due process clause. Citing *McKeiver,* one federal court has specifically held that due process of law does not require trial by jury in civil commitment proceedings. *Doremus v. Farrell,* 407 F.Supp. 509, 516 (D.Neb.1975). This Court would agree with that decision.

Moreover, the equal protection clause does not require that plaintiffs be afforded a jury trial. In this State, trial by jury is not generally available to the civilly committed before initial confinement. *See Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). In Maryland,

prospective civil committees under Regulation 10.04.03 receive prior to their commitment an administrative hearing before an administrative officer with no right to an immediate jury trial.

In claiming that their right to a jury trial is constitutionally mandated by the equal protection clause, plaintiffs rely on *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974). As in *Lynch*, Maryland has a statutory scheme which entitles both insanity acquittees[8] and civil committees to petition the court for release with a statutory right to a trial by jury at the judicial proceedings to be held to consider such release. Md.Ann.Code, Art. 59, § 15. In *Lynch*, the Court squarely held that basing the right to a jury on the "essentially irrelevant" factor of the individual's present confinement, so that a civil committee received no such right prior to commitment but could have a jury trial in later proceedings for his release after confinement, violated the equal protection clause.

This Court cannot agree with the conclusion reached by the Court in *Lynch*. Equal protection of the law simply means that similarly situated persons must receive similar treatment under the law. *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). This Court concludes that a state legislature could rationally distinguish between individuals already committed and prospective committees, and consequently could grant *greater* procedural protections, such as the right to a trial by jury, to those already confined for an indeterminate period of time.

Indeed, Congress has made a similar distinction in affording different rights to defendants in federal criminal cases who are not competent to stand trial from those who are not competent at the date of the offense. Under 18 U.S.C. § 4244, a federal judge determines the competency of such a defendant to stand trial, and this is not a jury question. *E. g., United States v. Huff*, 409 F.2d 1225, 1228 (5th Cir. 1969), and cases cited therein. However, a defendant is entitled to a jury trial if the issue involves his sanity at the time of the offense. Under § 4244, an individual may be civilly committed by a federal court for an indeterminate period of time, subject to periodic review by the court, as mandated by the statute. Thus, under federal law, one may be confined indefinitely without recourse to a jury trial on the issue of his sanity, if he has been found not competent to stand trial by a single federal judge.

In the case of an insanity acquittee in Maryland, he is afforded the right to a jury trial for the determination of his sanity at the time of the offense. Once the jury (or the judge, if a jury trial has been waived) has found him insane, it is entirely reasonable for Maryland to require that a judge be the one to determine whether he would then pose a danger to himself or to the safety of the person or property of others. However, once his dangerousness has been determined and he has been confined indefinitely, Maryland grants him the right to have a jury rule on his right to be released. These procedures are entirely consistent with the equal protection clause.

■ Plaintiffs' other equal protection arguments are likewise without merit. Plaintiffs first point out that defendants in guardianship proceedings brought under Maryland Rule R77 are specifically entitled to a jury trial. But such proceedings involve a much broader class of persons than insanity acquittees, and therefore equal protection comparisons are inapposite. *French v. Blackburn*, 428 F.Supp. 1351 (D.N.C.1977). Under Maryland law, a guardian may be appointed for one unable to manage "personal affairs and property effectively because of physical or mental disability, senility, or other mental weakness, disease, habitual drunkenness, or addition to drugs." Maryland Rule R73(b)(1). There is a rational basis for different treatment of the two classes in that a guardianship proceeding, which strips the individual

---

8. There is a three-month waiting period for insanity acquittees. Md.Ann.Code, Art. 59, § 27.

of voting and property rights, may be based on various disabling conditions. The insanity acquittee has had the fact of his disablement at the time of the offense already determined by a jury when he comes before the Court for a determination on the question of confinement. These differences justify the different treatment which Maryland has accorded these classes of individuals.

■ Plaintiffs also point out that insanity acquittees are not afforded the special procedural protections granted by the Maryland Defective Delinquency Act, Md. Ann.Code, Art. 31B § 1 et seq. Again, there are differences between the two classes which would permit different treatment by the Legislature. The Fourth Circuit has repeatedly upheld the constitutionality of the Defective Delinquency Act because of the special procedural safeguards provided for the completely unique class of defective delinquents. *Dower v. Boslow, supra; Tippett v. Maryland,* 436 F.2d 1153 (4th Cir. 1971), *cert. withdrawn as improvidently granted sub. nom. Murel v. Baltimore City Criminal Court,* 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972). Clearly, a defective delinquent should receive greater procedural protections than an insanity acquittee because the defective delinquent, although sane at the time of his offense and previously sentenced to a specific term of incarceration, nevertheless faces indeterminate confinement for treatment which may extend beyond the maximum term of his sentence.

As noted hereinabove, the equal protection clause does not require absolute equality or precisely equal advantages. *San Antonio Independent School District v. Rodriguez, supra,* 411 U.S. at 24, 93 S.Ct. 1278; *Dower v. Boslow, supra* at 973. The State Legislature is free to establish a comprehensive and innovative program for defective delinquents without extending the same special procedural safeguards to all indeterminately confined persons. *Cf. Dower v. Boslow, supra.*

■ This Court is satisfied that the decision to grant an individual the right to trial by jury before he may be confined because of his insanity is properly a legislative determination. *Doremus v. Farrell, supra.* If other important procedural safeguards are granted to an insanity acquittee such as effective representation by counsel and a meaningful hearing, this Court concludes that the denial of the individual's right to a jury trial would not impair his interest in a fair and accurate proceeding. *Developments in the Law—Civil Commitment of the Mentally Ill, supra* at 1295.

(c) *The right to independent psychiatric assistance at state expense*

■ The law is well settled in this Circuit that there is no constitutional right to an independent psychiatric examination at state expense in *criminal* proceedings. *Wilkins v. Maryland,* 402 F.Supp. 76, 80, 81 (D.Md.1975), *aff'd per curiam,* 538 F.2d 327 (4th Cir. 1976). Judge Blair of this Court there stated:

The fact is that Wilkins was examined by qualified psychiatrists and psychologists at a state hospital. The report of those doctors was made available to Wilkins and his attorney, and they could have been called by petitioner as witnesses at trial. The examiners were qualified professionals who rendered their professional opinions at the request of the court. The mere fact that their salaries were paid by the state no more impeaches their professional judgment than it would the professional judgment of a public defender or other appointed counsel. And, a criminal defendant certainly has no constitutional right to go expert shopping at state expense.

*A fortiori,* similar principles should control in *civil* commitment hearings involving an insanity acquittee. *Suzuki v. Quisenberry,* 411 F.Supp. 1113, 1129 (D.Haw.1976). The *Wilkins* rationale, that there is no reason to distrust the professional judgment of the State's psychiatrist, is equally applicable here. Moreover, by the terms of the partial consent decree, the attorney for the insanity acquittee will receive and have available in advance of trial the psychiatric

reports prepared by the State's expert. These safeguards satisfy the minimal requirements of due process under all the circumstances here.

Independent psychiatric assistance at state expense is not made available to civil committees in Maryland. However, plaintiffs point to the availability of this additional safeguard to defective delinquents. As previously discussed herein, this Court is satisfied that the Legislature was reasonably justified in concluding that a defective delinquent is entitled to greater procedural protections than an insanity acquittee, and that these greater protections need not be extended to all other classes of individuals facing indeterminate confinement. The Equal Protection Clause "does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970).

Plaintiffs' reliance on *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) and its progeny is misplaced. The Fourteenth Amendment does not require the state "to equalize economic conditions." *Ross v. Moffitt*, 417 U.S. 600, 612, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). Although it may be true that an affluent insanity acquittee may be able to obtain more expert assistance at the hearing than would an indigent insanity acquittee, no constitutional deprivation thereby results. *Ross v. Moffitt, supra.*

#### (d) *The standard of proof*

The law is well established in the Fourth Circuit that the preponderance of the evidence standard is consistent with the requirements of due process of law in defective delinquency proceedings. In *Tippett v. Maryland, supra*, the Fourth Circuit rejected the contention that the state must prove beyond a reasonable doubt that a person was a defective delinquent. Chief Judge Haynsworth stated for the Court:

> We might all be happier had it been stated in terms of clear and convincing proof rather than in terms of a preponderance of the evidence . . . In any event, in the present state of our knowledge, choice of the standard of proof should be left to the state. A legislative choice of the preponderance standard, the same standard governing civil commitments of mentally ill persons who have no history of criminality ought not to be held in violation of due process requirements when we have no firm foundation for an evaluation of the practical effects of the choice.

*Tippett v. Maryland, supra* at 1158–59.

In October 1973, the Department of Mental Hygiene adopted a new regulation setting forth procedures for the civil commitment of persons alleged to be suffering from a mental disorder.[9] Under Regulation 10.04.03, which is still in force, a civil committee is entitled to a hearing before an administrative officer prior to involuntary commitment. At such hearing, proof by clear and convincing evidence is required before commitment may be ordered. Plaintiffs, apparently satisfied that these administrative procedures are constitutional, argue that a similar standard of proof should be required for insanity acquittees.

In *Dower v. Boslow, supra*, the Fourth Circuit reaffirmed the constitutionality of the preponderance of the evidence standard for defective delinquents, in spite of Maryland's adoption of a stricter standard of proof in administrative proceedings involving civil committees. The Court held that a preponderance of the evidence standard for defective delinquents violated neither due process nor equal protection of the law.

Plaintiffs contend that *Tippett* and *Dower* stand for the limited proposition

---

9. These new regulations were promulgated following an action brought in this Court by civil committees against the State Department of Mental Hygiene and others. That action challenged as unconstitutional various provisions of Art. 59 relating to the involuntary commitment of mentally ill persons. *See Anderson v. Solomon*, 315 F.Supp. 1192 (D.Md.1970). In 1973, the new regulations were adopted by the Department, and the plaintiffs, apparently satisfied with the changes in Maryland law, dismissed the suit.

that a legislative choice of the preponderance standard will not be disturbed by a court. Plaintiffs point out that insofar as this case is concerned, there has been no declared legislative intention as to the standard of proof which will control at the judicial hearing established by the partial consent decree. Plaintiffs thus argue that, in the absence of any legislative direction, the standard of proof ". . . is the kind of question which has traditionally been left to the judiciary to resolve . ." *Woodby v. Immigration and Naturalization Service*, 385 U.S. 276, 284, 87 S.Ct. 483, 487, 17 L.Ed.2d 362 (1966). Accordingly, plaintiffs urge that this Court should exercise its judgment as to the appropriate standard of proof and not merely adopt the minimum standard required by the Constitution.

But this Court does not sit as a super-legislature to determine state policy. Only constitutional questions are presented in this case, and so long as a procedural requirement approved by the Attorney General of Maryland does not offend the United States Constitution, this Court should not write into state law a different standard which might seem to the Court to be more desirable. Plaintiffs' reliance on decisions in other jurisdictions is misplaced. Whatever other courts have held,[10] this Court is bound by rulings of the Fourth Circuit in *Tippett* and *Dower* that a preponderance of the evidence standard is consistent with the due process clause.[11]

■ Plaintiffs also argue that, as a matter of equal protection, the administrative standard requiring proof of clear and convincing evidence in ordinary civil commitment hearings under Regulation 10.04.03 should be extended to insanity acquittees. In *Dower v. Boslow, supra*, the Fourth Circuit rejected a similar equal protection argument advanced on behalf of defective

delinquents. In that case, the Fourth Circuit reversed Judge Kaufman of this Court who had held that equal protection principles required a standard of proof for defective delinquents no less than the standard of proof used for civil commitments.[12] Conceding that it was not an easy question, the Court was "inclined to think that the obvious differences are not of constitutional magnitude." *Dower v. Boslow, supra* at 972. Judge Craven then went on to say (at page 972):

> We are unable to conclude that a person is afforded less protection by a *judicial procedure* which requires proof by a *preponderance of the evidence*, but which grants the important right of *jury trial* [the procedures available to defective delinquents] than he is given by an *administrative procedure* before a single *hearing officer*, even though the state is required there to prove the issue by *clear and convincing evidence* [the procedures available to civil committees]. (Emphasis in original).

The essential question here is whether *administrative* regulations including the standard of proof which governs an administrative hearing for civil committees must be extended to a *judicial* hearing for *insanity acquittees* in order to satisfy the equal protection clause. This Court is satisfied that such action is not constitutionally required.

This Court has held herein that an insanity acquittee need not be granted a jury trial before he is committed involuntarily. Concededly then, one of the compensating rights mentioned by Judge Craven in *Dower* is not present here. Nevertheless, there are other important counterbalancing rights accorded an insanity acquittee but not a civil committee which would lead this Court to the same conclusion reached in *Dower*

---

10. Some courts have held that proof beyond a reasonable doubt is required for civil commitments. *E. g. In Re Ballay*, 157 U.S.App.D.C. 59, 482 F.2d 648 (1973); *Lessard v. Schmidt, supra* at 1094–95. Other courts have adopted the clear and convincing evidence standard. *E. g., Lynch v. Baxley, supra*.

11. Although *Tippett* and *Dower* dealt with defective delinquency proceedings, the reasoning of those cases is equally applicable to insanity acquittees.

12. Judge Kaufman's Opinion is reported at *Dower v. Director, Patuxent*, 396 F.Supp. 1070 (D.Md.1975).

that the clear and convincing evidence standard is not required under the circumstances. An insanity acquittee will have already been adjudged insane at the time when the offense was committed by a jury (if he asked for one). He will then under the partial consent decree receive a judicial, not an administrative hearing. This hearing is held solely to determine whether he shall under § 27 [13] of Article 59 be involuntarily confined because of his dangerousness following his acquittal on grounds of insanity. If he is then confined to a State hospital, § 28 of Article 59 authorizes the hospital staff to apply for the conditional release of the patient. § 14 of Article 59 gives the patient a statutory right to petition at any time for habeas corpus relief. Even more significantly, within three months after such confinement, the insanity acquittee has the right to have a jury determine whether he should then be released, pursuant to § 27 and § 15 of Article 59.[14]

Moreover, there are significant differences between an insanity acquittee and a defective delinquent. The latter should clearly be given greater procedural protections at the proceedings to be held to determine his defective delinquency. Before he appears at such proceedings, he will have been found sane by the jury (if the defense of insanity has been raised) but guilty of a crime. Yet at the defective delinquency proceedings, he faces the risk, even though sane, of an indeterminate commitment which extends beyond the penalty prescribed by law for the particular offense. Greater safeguards such as a jury trial are thus required in defective delinquency pro-

ceedings but not required in the far different case of an insanity acquittee appearing at a judicial hearing after he has been found to be insane at the time of the offense.

Moreover, this Court seriously doubts that an administrative regulation of this sort can be relied upon to impose upon state courts the suggested higher standard of proof. *Davis v. Director, Patuxent Institution*, 29 Md.App. 705, 351 A.2d 905 (1975); *Bush v. Director, Patuxent Institution*, 22 Md.App. 353, 324 A.2d 162, *cert. denied* 272 Md. 745 (1974).

In *Bush*, the Maryland Court of Special Appeals said the following (at page 364, 324 A.2d at page 169):

> While it is somewhat of an anomaly to have a higher standard of proof required in an administrative hearing than that used by the Courts on appeal in the same case, nevertheless, by virtue of the Secretary's adoption of the "clear and convincing standard", that is exactly the situation that has developed.

> The Secretary's election to utilize the standard of "clear and convincing evidence" in his Department's administrative hearings does not affect the standard used by the Courts in other proceedings, nor may the Secretary's administrative rules, in the absence of a clear legislative intent to the contrary, supersede the decisions of the Court of Appeals or this Court.

> *We cannot conceive of a court's holding that an administrative regulation, requiring a standard of proof different from*

---

**13.** Pursuant to the partial consent decree, the parties agree that substantial portions of § 27 of Article 59 are constitutional and govern the judicial hearing in question.

**14.** § 15 of Article 59 provides in pertinent part as follows:

"(a) *Petition to be filed*; *respondent.*—Any patient may, at any time, subject to the limitations specified in this section, file a petition in the equity court of the county in which he resides or resided at the time of his admission, or in which he is confined for the purpose of securing his release. Any person having a legitimate interest in the welfare of

the patient may file the petition on his behalf. * * *

(c) *Trial by jury.*—The petitioner may request that his petition be heard by a jury, and thereafter, such trial shall proceed as in a civil action at law.

(d) *Issues to be determined*; *action by court upon jury decision.*—The issues to be determined are:

(1) Does the patient have any mental disorder; and

(2) Is the disorder of such a nature that for the protection of himself or others, the patient needs in-patient medical care or treatment. * * *"

*that required by the courts in similar cases, is tantamount to a denial by the State of equal protection of law where the court standard complies with constitutional minimum standards.* If such were the case, then, hypothetically, a State agency, authorized to adopt rules and regulations, could determine that in all hearings before it the standard of proof required to establish guilt would be more than "beyond a reasonable doubt", i. e., proof of "guilt to a mathematical certainty." It would follow that the State in all criminal cases would be required to scrap the present standard of proof beyond a reasonable doubt and to substitute therefor proof of guilt to a mathematical certainty. Otherwise, the State would subject itself to attack on the theory of denial of equal protection. (Emphasis supplied)

In *Davis*, the Maryland Court of Special Appeals reaffirmed *Bush* and stated that a contrary holding would be inconsistent with the legislative intention. The Court elaborated as follows (29 Md.App. at p. 717, 351 A.2d at p. 912):

We do not deem it to have been the legislative intent in authorizing the Secretary of Health and Mental Hygiene to make rules and regulations for the administration and enforcement of the Mental Hygiene article and for the operation and administration of the Department of Health and Mental Hygiene, that the Secretary, in exercise of such authority, could set the standard of proof in judicial proceedings, including those related to matters completely independent of his responsibilities, duties, and jurisdiction. "In construing statutes, results that are unreasonable or inconsistent with common sense should be avoided, whenever possible." *Height v. State*, 225 Md. 251, 259, 170 A.2d 212 (1961), citing *Maguire v. State*, 192 Md. 615, 65 A.2d 299 (1949).

This Court would agree with these observations made by the Maryland appellate courts. It is therefore concluded that the equal protection clause does not require

that the *administrative* standard of clear and convincing evidence for civil commitment be applied at a *judicial* hearing for the commitment of insanity acquittees. The preponderance of the evidence standard, which the Fourth Circuit has upheld as consistent with due process of law in defective delinquency proceedings, will be the applicable standard at the judicial hearing to be held pursuant to the partial consent decree, unless the Maryland Legislature should subsequently decide otherwise.

#### (e) *Periodic review hearings*

Plaintiffs next contend that mandatory periodic review hearings with the same procedural safeguards as afforded civil committees are necessary to insure the continued existence of the original legal justification for the commitment of insanity acquittees. As the Supreme Court stated in *O'Connor v. Donaldson*, 422 U.S. 563, 574–5, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975),

Nor is it enough that Donaldson's original confinement was founded upon a constitutionally adequate basis, if in fact it was, because even if his involuntary confinement was initially permissible, it could not constitutionally continue after that basis no longer existed. *Jackson v. Indiana, supra*, 406 U.S. [715] at 738, 92 S.Ct. [1845] at 1858 [32 L.Ed.2d 435]; *McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 248–250, 92 S.Ct. 2083, 32 L.Ed.2d 719.

As discussed hereinabove, the present statutory scheme has numerous safeguards designed to prevent the indefinite and unconstitutional confinement of an insanity acquittee. §§ 14, 15, 27 and 28 of Article 59 permit three separate kinds of periodic review to insure that if the basis for the confinement of the insanity acquittee no longer exists, he will be able to avail himself of court proceedings to seek his release.

This Court is satisfied that these three alternate statutory methods for post-commitment release of insanity acquittees are sufficient under the due process clause. Plaintiffs contend that the § 15 release procedure is inadequate because it must be

initiated by the patient, upon whom the burden of proof is also placed. However, plaintiffs can cite no case in support of their claim that an automatic periodic rehearing is constitutionally required. Indeed, the one court that has considered this issue has held to the contrary. *Suzuki v. Quisenberry, supra.*

■ Moreover, there is nothing in the record here to indicate that an insanity acquittee, or someone on his behalf, could not be expected to initiate the § 15 release provisions.[15] Plaintiffs have claimed that these statutes are unconstitutional on their face and have not produced facts to indicate that the provisions in question are unconstitutional as applied to them. Maryland's legislative decision to place the burden of proof on the patient at the § 15 release proceedings, at which he receives the valuable right to a trial by jury, does not violate due process of law. *Cf. Dower v. Boslow, supra.* Accordingly, this Court concludes that the release provisions of § 15 alone satisfy the requirements of due process of law. The supplemental procedures of § 14 and § 28 of Article 59 provide further procedural protections.

■ Plaintiffs also claim a denial of equal protection because persons civilly committed under Regulation 10.04.03 receive an administrative review hearing, on identical terms as the original administrative commitment hearings, six months from the date of commitment and annually thereafter. At this administrative hearing, the Department of Health and Mental Hygiene must justify continued confinement of the patient by clear and convincing evidence.

As discussed more fully hereinabove, differences between administrative procedures available to civil committees and judicial procedures available to insanity acquittees

do not result in a violation of the equal protection clause. Plaintiffs seek the best of both worlds. They have accepted in the partial consent decree a judicial rather than an administrative hearing and have also accepted substantial portions of § 27 as controlling.[16] Yet they now seek the further safeguards which were written into the administrative regulations to guarantee additional protections for an individual who would not be appearing before a court prior to confinement.

The same argument presented by plaintiffs here was rejected by the Maryland Court of Special Appeals in *Daniels v. Superintendent,* 34 Md.App. 173, 366 A.2d 1064 (1976). At page 178, 366 A.2d at page 1068, the Court said the following:

> Even if appellant's contention that he was denied equal protection were properly before us, he assumes a proposition with which we would have to disagree: that the judicial procedure affords less protection than would the administrative procedure. Conceding that the procedures are not equal (*i. e.,* the same), the protections afforded judicially are no less than those afforded administratively. That concern went to its repose in the persuasive Fourth Circuit opinion of *Dower v. Boslow,* 539 F.2d 969.

This Court would agree. Procedural protections for the separate classes of civil committees and insanity acquittees need not be identical, so long as those procedures comport with due process of law, as they do here. *United States v. Jackson,* 179 U.S. App.D.C. 375, 553 F.2d 109 (1976); *Dower v. Boslow, supra.* It would indeed be anomalous, as noted by the Court of Special Appeals in *Bush v. Director, supra,* if a State administrative agency could by the adoption of an administrative regulation invalidate statutory procedures approved by

---

15. In *Briggs v. Mandel, supra,* the Court ordered the Maryland Public Defender to provide counsel to each civil committee and to request, if necessary, a periodic recertification hearing. The providing of such assistance of counsel without specific request would presumably also be made available to insanity acquittees by the Public Defender.

16. Thus, this Court does not have before it any claim that § 27 is unconstitutional in its entirety and that the administrative procedures should be made applicable in their entirety to insanity acquittees as well as to civil committees.

the State Legislature. Such a result would necessarily follow if this Court were to accept the equal protection arguments advanced by the plaintiffs in this case.

### (f) *Retroactivity*

It is well settled in this Circuit that the crucial factor in deciding whether a ruling is retroactive is the effect which the denial of constitutional rights or procedures subsequently mandated might have had on the accuracy of the truth finding process. *Woodall v. Pettibone*, 465 F.2d 49, 50 (4th Cir. 1972), *cert. denied*, 413 U.S. 922, 93 S.Ct. 3054, 37 L.Ed.2d 1044 (1973); *see Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). After a review of the pertinent authorities, this Court is satisfied that similar principles should be applied to civil commitment proceedings in this Circuit. *E. g., Heryford v. Parker*, 396 F.2d 393 (10th Cir. 1968); *Lynch v. Baxley*, 386 F.Supp. 378, 397 (M.D.Ala.1974); *State v. Krol*, 68 N.J. 236, 344 A.2d 289, 306 (1975). The right to a judicial hearing and the right to appointed counsel prior to involuntary commitment are basic to the accuracy of the truth finding function. This Court concludes therefore that full retroactive effect should be given to these constitutional principles in proceedings for the commitment of insanity acquittees. *E. g., Lynch v. Baxley, supra* at 397. If the final decree entered by this Court is given retroactive effect, it will be necessary to hold some 128 hearings for insanity acquittees who are presently confined. Obviously, all such hearings cannot be held at once without causing serious disruption in the Maryland courts. A reasonable period of time will be required, and this Court would hope that all hearings could be completed within six months.

Defendants suggest that providing for judicial release hearings, as mandated in § 15 of Article 59, would be an adequate alternative to giving full retroactive effect to the decree entered here. This Court would disagree. Because § 15 hearings shift the burden of proof to the patient to justify his release, such hearings might perpetuate the confinement of some individuals with respect to whom the State could not have otherwise met its initial burden by a preponderance of the evidence. "Fairness demands that further confinement of a person presently committed be conditioned upon a showing by the State that he can in fact be committed under constitutionally proper standards." *State v. Krol, supra*, 344 A.2d at 306.

## II

### *Collateral Estoppel*

Another issue that arises in this case is whether the defendants are collaterally estopped from denying that Section 27 of Article 59 is unconstitutional because of a prior decision of a Maryland trial court. In *Sykes v. Department of Health and Mental Hygiene of the State of Maryland*, Civil No. 14759, Judge Charles D. Harris of the Baltimore City Court held in a lengthy written Opinion filed on January 8, 1976 that § 27 of Article 59 was unconstitutional in its entirety. Following oral argument in this case, the Court requested further briefs on the issue of collateral estoppel.

After a review of the record here in the light of the briefs filed by the parties, this Court concludes that plaintiffs would not be entitled in this case to rely on principles of collateral estoppel in support of the relief they seek. In the complaint, the plaintiffs asserted that § 27 of Article 59 was unconstitutional in its entirety. However, they have now withdrawn this broad attack on the statute and are now merely asserting that parts of § 27 are unconstitutional. By the express terms of the partial consent decree, the parties have agreed that substantial portions of § 27 of Article 59 are applicable to procedures for the commitment of insanity acquittees. *See* Paragraphs 2, 3 and 5 of the partial consent decree. Indeed, the class represented by plaintiffs has been constituted in terms of individuals committed pursuant to § 27. Thus, the parties are presumably now satisfied that substantial portions of the statute

are constitutional. In view of the judicially approved concessions made by the parties, the plaintiffs would not now be entitled to rely on the *Sykes* case to claim that § 27 is unconstitutional in its entirety. Nor would *Sykes* be a proper vehicle for claiming that parts of § 27 are unconstitutional, since the *Sykes* ruling was not based on the premise applicable here that substantial portions of the statute are valid.

In any event, the particular circumstances of the *Sykes* case would make collateral estoppel inapplicable here. In *Sykes*, the petitioner, an insanity acquittee involuntarily confined pursuant to § 27, was seeking habeas corpus relief under State law. Sykes contended that Article 59, § 27 denied him due process of law and equal protection of the law. In his Opinion, Judge Harris of the Baltimore City Court agreed that the petitioner had been denied these constitutional rights. However, Maryland law precludes any appeal by the State, *see* Md.Ann.Code, Cts. & Jud.Proc. Art. § 3–706(a), and because the issue has not been ruled upon by the Maryland appellate courts, the Attorney General of Maryland has declined to follow the *Sykes* ruling in other cases.

Collateral estoppel is not applicable here for several reasons. First, the defendants in this case are not the same as in *Sykes*. *See Blonder-Tongue v. University Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Secondly, the issues involved here are purely legal issues as to which collateral estoppel effect is less often accorded. 1B *Moore's Federal Practice,* ¶ 0.442[1] at 3851. Finally, the defendant in *Sykes* had no opportunity to appeal and "the availability of appellate review for the correction of errors has become critical to the application of preclusion doctrine." *Restatement (Second) of Judgments,* § 68.1(a), comment a at 28 (Tent. Draft No. 4, April 15, 1977).

For all these reasons, this Court is satisfied that plaintiffs would not be entitled in any event to the relief they are seeking because of principles of collateral estoppel.

## III

### Conclusion

In summary, this Court holds (1) that insanity acquittees have a right to counsel of their choice and, if indigent, to the mandatory assistance of appointed counsel at the judicial commitment hearing established by the partial consent decree; (2) that insanity acquittees have no right at such hearing to a trial by jury; (3) that insanity acquittees have no right at such hearing to the appointment at State expense of an independent psychiatrist; (4) that insanity acquittees have no right at such hearing to a higher standard of proof than the preponderance of the evidence standard; (5) that insanity acquittees have no right following their commitment to periodic review hearings before an administrative hearing officer pursuant to Regulation 10.04.03 of the State Department of Health and Mental Hygiene; and (6) that insanity acquittees who are presently confined are retroactively entitled to a judicial commitment hearing as provided in the partial consent decree and, if indigent, to the mandatory assistance of appointed counsel at such hearing.

Counsel should meet and submit an appropriate Order.