RICARDO DAVID COARD *v.* STATE OF MARYLAND

[No. 1343, September Term, 1978.]

NEIL WILLIE ENGLISH *v.* STATE OF MARYLAND

[No. 1344, September Term, 1978.]

*Decided July 12, 1979.*

The cause was argued before MOORE, LOWE and MACDANIEL, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellants.

*Valerie A. Leonhart, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Neil R. Myerberg, State's Attorney for St. Mary's County,* and *John E. Pleisse, Assistant State's Attorney for St. Mary's County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

The primary issue to be decided in these two cases arises from a consent decree in the United States District Court case of *Dorsey v. Solomon,* 435 F. Supp. 725 (D. Md. 1977), *affirmed in part and remanded in part,* 604 F.2d 271 (4th Cir. 1979). *Dorsey* was a class action brought seeking a declaration of unconstitutionality of the Maryland law governing involuntary commitment of persons found to be "not guilty" by reason of insanity. In addition to numerous issues decided, a partial consent decree was submitted by the parties and approved by the court.

The "parties" who agreed to this decree, presumably on behalf of the State, were:

"Neil SOLOMON, in his official capacity as Secretary of Health and Mental Hygiene of the State of Maryland, Benjamin D. White, in his official capacity as Acting Commissioner of Mental Hygiene of the State of Maryland, Wilfried R. Freinek, in his official capacity as Acting Superintendent of the Clifton T.

Perkins Hospital Center, David L. Cahoon, in his official capacity as Associate Judge of the Circuit Court for Montgomery County, Albert L. Sklar, in his official capacity as Associate Judge of the Supreme Bench of Baltimore City, Shirley B. Jones, in her official capacity as Associate Judge of the Supreme Bench of Baltimore City, and James A. Perrott, in his official capacity as Associate Judge of the Supreme Bench of Baltimore City, Individually and on behalf of all others similarly situated, Defendants."

The "party" incidentally bound to this decree was The Department of Health and Mental Hygiene (The Department), through its Secretary, Neil Solomon.

The decree provided,[1] among other things, that:

"2. The Department of Health and Mental Hygiene *shall* submit to the Court the required evaluation report under Article 59, § 27 Maryland Code Annotated not later than thirty (30) days from the date of the Court's order directing evaluation and examination of the insanity acquitted person.

. . .

5. No insanity acquitted person *shall* be confined for treatment pursuant to Article 59, § 27 Maryland Code Annotated, without a prior judicial hearing to be held within sixty (60) days after receipt of the evaluation report." 435 F.Supp. at 730-731 (emphasis added).

In both cases before us, the appellants argue that because the commitment hearing was not held within sixty days of the receipt of the evaluation report from Clifton T. Perkins Hospital they must be released. Appellants rely solely upon *Moss v. Director,* 279 Md. 561 (1977), contending that the term "shall" in the consent decree is mandatory. The State

1. Senate Bill 870, focusing on the procedures for confinement and release of persons found not guilty of a crime by reason of insanity, has subsequently been enacted and takes effect July 1, 1979.

expressly concedes factual noncompliance with the exact time provisions of the consent decree, but it argues both that the use of "shall" is directory rather than mandatory and that the sanction for any deviation from the decree's terms should not be dismissal and release.

It is our opinion that the District Court did not intend the extreme sanction of release appropriate for a procedural noncompliance of limited significance; and even if it did, the Courts of Maryland are under no compulsion to enforce a United States District Court decree by a sanction injurious to their citizenship, the justice with which it cannot agree.

In neither case before us has there been an allegation of prejudice. Each appellant has had his hearing, but complains only that it was delayed — in the case of English for 17 days, and of Coard for 23 days — beyond the 60 days set forth in the decree. In the case appellants rely upon, *Dorsey v. Solomon, supra,* the relief granted was not a release of the committed person, but rather the provision of a new hearing to be held in compliance with the new law formulated by the court. Both appellants in the cases before us had their hearings belatedly, but not prejudicially so; such prejudice, if proffered must be measured against due process standards. *Humphrey v. Cady,* 405 U. S. 504 (1972).[2]

In *Moss, supra,* upon which appellants rely, the Court of Appeals stated:

> "It is now a familiar principle of statutory construction in this State that use of the word 'shall' is presumed mandatory unless its context would indicate otherwise . . . ." *Id.* at 564-565.

The time provision in question actually used the term "shall forthwith" rather than "shall." The Court of Appeals acknowledged, as we had, that other opinions of the Court of Special Appeals "had previously indicated the 'forthwith' language was mandatory;" accordingly, in the *Moss* case they

---

2. Although mentioned in a footnote in the State's brief and at oral argument, the due process issue addressed in the recent case of Addington v. Texas, 441 U. S. 418, 60 L.Ed.2d 323 (1979), is not properly before us for review. Md. Rule 1085; Vuitch v. State, 10 Md. App. 389 (1970), *cert. denied,* 261 Md. 729 (1971).

again "agree[d] that it is." In that context they quoted the familiar principle of statutory construction "that use of the word 'shall' is presumed mandatory unless its context would indicate otherwise." *Id.* at 564-565.

The provisions now before us do not use the "forthwith" term found useful in *Moss* to indicate mandatory intentions. We also note that in *Moss* the Court of Appeals addressed a statutory interpretation question. However, when dealing with an interpretation of its rules, Md. Rule 18, the Court of Appeals has held that the word "shall" was not mandatory but directory. *Pressley v. Warden,* 242 Md. 405, 406-407 (1966). Compare *Johnson v. State,* 282 Md. 314 (1978). That holding was based upon several cases interpreting as directory the same word used constitutionally in Md. Const., Art. IV, § 23 in the same context as the rule. *Id.* at 406.

While not always dispositive of the interpretative question, the absence of a penalty provision also indicates that the language sets forth directory rather than mandatory guidelines. *Moss, supra* at 566. That guide would seem most appropriately applied to a decree by a court cognizant of the need for penalties to enforce its decree. The absence of an explicit release provision indicates that the consent decree constitutes a good faith agreement of the parties sanctioned by the court in light of its inherent powers to enforce, but the decree hardly "mandates" the action with peremptory release as the alternative.

We also point out that which both parties seem to have overlooked. Maryland Courts are not bound by the decisions of the United States District Courts or of the United States Courts of Appeals. *Wiggins v. State,* 22 Md. App. 291, 302 (1974), *aff'd* 275 Md. 689 (1975). Even when a federal court (other than the Supreme Court) decides an issue directly contrary to State policy, we are not compelled to enforce its holdings unless we are persuaded by the reasoning supporting its decisions. *Wiggins, supra.*

The federal courts are generally cognizant of this limitation (*Lawrence v. Woods,* 432 F. 2d 1072 (7th Cir. 1970)) and in the *Dorsey* case particularly acknowledged that it did not intend to substitute its views for State policy especially procedurally:

" ... this Court does not sit as a superlegislature to determine state policy. Only constitutional questions are presented in this case, and so long as a procedural requirement approved by the Attorney General of Maryland does not offend the United States Constitution, this Court should not write into state law a different standard which might seem to the Court to be more desirable." *Dorsey v. Solomon, supra* at 737.

The *Dorsey* Court then directed its ruling at constitutional compliance guaranteeing a hearing. The procedural aspect of time, within constitutional limitations, was by agreement of the parties, although stamped with the approving imprimatur of the court.

It is inconceivable in any case, that the District Court would, if it could, compel this Court or the State to release persons, whose culpable conduct has been conceded but excused, either because they do not understand what is criminal, or they know what is criminal but cannot help acting out in the proscribed manner. Md. Ann. Code art. 59, § 25 (a). *See Gardner v. State,* 41 Md. App. 187 (1979), *cert. granted,* 284 Md. 744 (March 28, 1979). To release such persons into society because of a relatively insignificant administrative breakdown, in the absence of prejudice, is an unacceptable alternative sanction. Society must not always be the scapegoat simply to enforce rigidly every agreed upon procedural compliance. The extreme dismissal sanction for speedy trial denial, *Barker v. Wingo,* 407 U. S. 514 (1972), and for its statutory little brother, Md. Ann. Code art. 27, § 616 S, is directly related to the abrogation of constitutional rights, as are the other sanctions (such as the exclusionary rule) construed to enforce adherence to constitutional principles by denying societal relief without punishing the offender or other party at fault for the violation. But nowhere has there ever been so extreme a sanction applied against society rather than the offender for a procedural noncompliance with a nisi prius court decree of the type here formulated by a stipulation between the parties seeking a declaratory judgment.

The penalty available to the District Court for failure to

comply with its decrees is the inherent power of contempt, and that is applicable only against the parties to the case. We are unaware of *any* authority in the District Court to release Maryland's criminally insane for procedural violation of the District Court's decrees; but of more significance here, we are unaware that that court can compel a Maryland Court to do so. *Moon v. State,* 1 Md. App. 569, 571 (1967), *aff'd* 250 Md. 468 (1968); *see also Davis v. Director,* 29 Md. App. 705, 710-717 (1976). Perhaps it may hold the offending party (*e.g.,* Neil Solomon, Secretary of the Department of Mental Health and Hygiene) in contempt and punish him, it or them accordingly, for failure to comply with a decree to which he or they had committed himself or themselves and the department.

The second question raised in each case is also identical, but of no serious consequence.

> "Did the trial court err in allowing a psychiatrist to testify as an expert in the area of the prediction of future behavior?"

The argument of appellants is succinctly set forth by the State.

> "Appellant argues that Dr. Abbas testified as an expert in the field of augury without being qualified as an expert in devination."

The argument is frivolous as indicated by the State's concise response:

> "It is simply a matter of common sense that the psychiatrist is eminently qualified to state with reasonable accuracy what a person's future behavior is likely to be on the basis of that person's past behavior."

The trial judge did not abuse his discretion in seeking expert help in the ultimate issue to be decided. *Andrews v. Andrews,* 242 Md. 143, 152-153 (1966).

> *Judgments affirmed.*
> *Costs to be paid by appellants.*